1  BRIAN M. BERLINER (S.B. #156732)
   bberliner@omm.com
2  JORDAN RAPHAEL (S.B. #252344)
   jraphael@omm.com
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, California  90071-2899
   Telephone:  (213) 430-6000
5  Facsimile:   (213) 430-6407
6
7  TIM BYRON (S.B. #277569)
   tbyron@omm.com
8  JESSE J. KOEHLER (S.B. #300530)
   jkoehler@omm.com
9  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
10 San Francisco, California 94111
   Telephone:  (415) 984-8700
11 Facsimile:   (415) 984-8701

12 Attorneys for Defendants
   MILLENNIUM PRODUCTS, INC. and
13 COCOKEFIR LLC

14

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19 LIFEWAY FOODS, INC.,              | Case No. 2:16-cv-07099-R-JEM

20              Plaintiff,            | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION & AMENDED MOTION FOR PRELIMINARY INJUNCTION**

21       v.

22 MILLENNIUM PRODUCTS, INC.,
   d/b/a GT'S KOMBUCHA /
23 SYNERGY DRINKS; and            | Judge:  Hon. Manuel L. Real
   COCOKEFIR LLC,
24                                 | Hearing Date:  Nov. 7, 2016
25              Defendants.
                                   | Complaint Filed:  September 21, 2016
26                                 | Trial Date:  Not Set
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENT .................................................................. 1

II.    BACKGROUND ........................................................................................ 3

III.    PLAINTIFF'S MOTION FAILS TO MEET ANY OF THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION ...................... 8

    A.    Lifeway's Claims Are Time-Barred .................................................. 8

        1.    Lifeway's State Law Claims Are Statutorily Barred .................. 9

        2.    All Claims Are Barred by Laches and Equitable Estoppel ...... 10

    B.    Lifeway Is Not Likely to Succeed on the Merits ............................. 13

        1.    Lifeway's Allegations Regarding Use of the Term "Kefir" Fail ............................................................................. 13

        2.    Lifeway's Allegations of Unauthorized Health Claims Fail ...................................................................................... 20

    C.    The Equitable Factors Do Not Favor an Injunction ........................ 21

        1.    Lifeway Has Not Established Irreparable Harm ..................... 22

        2.    The Balance of Hardships Weighs Heavily in Defendants' Favor ................................................................ 24

        3.    A Preliminary Injunction Will Not Serve the Public Interest ..................................................................... 25

IV.    CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

Page

## CASES

*A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ........................................................... 11

*Ang v. Whitewave Foods Co.*,
  No. 13-cv-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) .................. 16, 17

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010) ........................................................... 12, 13

*Boys Town, U.S.A., Inc. v. World Church*,
  349 F.2d 576 (9th Cir. 1965) ............................................................... 13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ........................................................................... 13

*CKE Rest. v. Jack in the Box, Inc.*,
  494 F. Supp. 2d 1139 (C.D. Cal. 2007) ................................................. 16, 19, 20

*Conopco, Inc. v. Campbell Soup Co.*,
  95 F.3d 187 (2d Cir. 1996) .................................................................. 12

*DISH Network Corp. v. FCC*,
  653 F.3d 771 (9th Cir. 2011) ............................................................... 25

*Dr. Seuss Enters. v. Penguin Book USA*,
  924 F. Supp. 1559 (S.D. Cal. 1996) ..................................................... 9

*Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*,
  No. C13-2174RSM, 2015 WL 2345183
  (W.D. Wash. May 14, 2015) ............................................................... 11, 12

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ............................................................ 10

*Essence Imaging Inc. v. Icing Images LLC*,
  No. 2:13-CV-5449-CAS, 2014 WL 1384028
  (C.D. Cal. Apr. 9, 2014) ..................................................................... 24

*Fitbug Ltd. v. Fitbit, Inc.*,
  78 F. Supp. 3d 1180 (N.D. Cal. 2015) .................................................. 11

*Free Kick Master LLC v. Apple Inc.*,
  No. 15-CV-3403-PJH, 2016 WL 777916 (N.D. Cal. Feb. 29, 2016) .......... 10, 12

*Gitson v. Trader Joe's Co.*,
  No. 13-cv-01333-VC, 2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) ........... 16

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
  No. 07cv157 WQH(RBB), 2007 WL 951350
  (S.D. Cal. Mar. 23, 2007) ................................................................... 24

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.,*
736 F.3d 1239 (9th Cir. 2013) .................................................................. 3, 22

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
304 F.3d 829 (9th Cir. 2002) ................................................................. 10, 11

*Jensen v. W. Irrigation & Mfg., Inc.,*
650 F.2d 165 (9th Cir. 1980) ....................................................................... 12

*JHP Pharm., LLC v. Hospira, Inc.,*
52 F. Supp. 3d 992 (C.D. Cal. 2014) ..................................................... 14, 20

*Johnson v. Couturier,*
572 F.3d 1067 (9th Cir. 2009) ..................................................................... 22

*Jolly v. Eli Lilly & Co.,*
44 Cal. 3d 1103 (1988) ................................................................................. 9

*Kane v. Chobani, Inc.,*
No. 12-CV-02425-LHK, 2013 WL 3776172
(N.D. Cal. July 15, 2013) ............................................................................ 22

*Kerr Corp. v. N. Am. Dental Wholesalers, Inc.,*
No. SA CV 11-0313 DOC (CWx), 2011 WL 2269991
(C.D. Cal. June 9, 2011) .............................................................................. 24

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC,*
No. 12-cv-03762-SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ............ 13

*Leatherman Tool Grp., Inc. v. Coast Cutlery Co.,*
823 F. Supp. 2d 1150 (D. Or. 2011) ........................................................... 22

*Marlo v. UPS,*
251 F.R.D. 476 (C.D. Cal. 2008) ................................................................ 20

*Miller v. Glenn Miller Prods., Inc.,*
454 F.3d 975 (9th Cir. 2006) ....................................................................... 10

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.,*
762 F.2d 1374 (9th Cir. 1985) ..................................................................... 24

*Reese v. AT & T Mobility II, LLC,*
No. 2:13-CV-05198-ODW (PLAx), 2014 WL 1873046
(C.D. Cal. May 9, 2014) .............................................................................. 13

*Reinsdorf v. Skechers U.S.A.,*
922 F. Supp. 2d 866 (C.D. Cal. 2013) .................................................... 18, 19

*Ries v. Ariz. Beverages USA LLC,*
287 F.R.D. 523 (N.D. Cal. 2012) .................................................................. 9

iii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Sali v. Univ. Health Servs. of Rancho Springs, Inc.*,
    No. CV 14-985 PSG, 2015 WL 12656937 (C.D. Cal. June 3, 2015) ................25

4

5

*Saterbak v. Nat'l Default Servicing Corp.*,
    No. 15CV956-WQH-BGS, 2016 WL 4430922
    (S.D. Cal. Aug. 22, 2016) ....................................................................................10

6

7

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...............................................................13, 17, 20

8

9

*Spraying Sys. Co. v. Delavan, Inc.*,
    762 F. Supp. 772 (N.D. Ill. 1991) ......................................................................18

10

*Surefire, LLC v. Advanced Armament Corp.*,
    No. SA CV 08-1405 DOC (RNBx), 2009 WL 10654598
    (C.D. Cal. Apr. 13, 2009) ............................................................................16, 17

11

12

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    856 F. Supp. 2d 1136 (C.D. Cal. 2012) ..............................................................12

13

14

*United States v. Bayer Corp.*,
    No. 07-01 (JLL), 2015 WL 5822595 (D.N.J. Sept. 24, 2015) ...........................21

15

*Vigil v. Michelin N. Am., Inc.*,
    No. EP-05-CV-001-KC, 2007 WL 2778233
    (W.D. Tex. Aug. 23, 2007) .................................................................................19

16

17

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................................3, 8, 22

18

19

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................................9

20

*Zeltiq Aesthetics, Inc. v. BTL Indus.*,
    32 F. Supp. 3d 1088 (N.D. Cal. 2014)...........................................................22, 23

21

## **STATUTES**

22

21 U.S.C. § 337(a) ...................................................................................................13

23

21 U.S.C. § 341 .......................................................................................................15

24

21 U.S.C. § 343(r)(6) ...............................................................................................21

25

Cal. Bus. & Prof. Code § 17208 ...............................................................................9

26

Cal. Civ. Proc. Code § 338 .......................................................................................9

27

28

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

## OTHER AUTHORITIES

65 Fed. Reg. 1000-01 (Jan. 6, 2000) .........................................................................21

Codex Stan 243-2003 § 2.1 ...............................................................................16

FDA, Claims That Can Be Made for Conventional Foods and Dietary
  Supplements, Sept. 2003,
  http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingN
  utrition/ucm111447.htm ...............................................................................21

J.R. Liu & C.W. Lin, *Production of Kefir from Soymilk With or
  Without Added Glucose, Lactose, or Sucrose*, 65 J. Food Sci. 716-
  19 (2000).............................................................................................................4

J.R. Liu et al., *Antitumor Activity of Milk Kefir and Soy Milk Kefir in
  Tumor-Bearing Mice*, 44 Nutrition & Cancer 183-87 (2002)................................4

K. Rodrigues et al., *A Novel Beer Fermented by Kefir Enhances Anti-
  Inflammatory and Anti-Ulcerogenic Activities Found Isolated in Its
  Constituents*, 21 J. Functional Foods 58-69 (2016) ...............................................4

Shari S. Diamond, *Reference Guide on Survey Research*, in
  REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (Federal Judicial
  Center 3d ed. 2011) ...............................................................................18, 19

## RULES

Fed. R. Civ. P. 6...............................................................................................8

## REGULATIONS

21 C.F.R. § 101.3(b) .........................................................................................15

21 C.F.R. §§ 10.25(a) & 10.30 ...............................................................................20

21 C.F.R. §§ 130–169 .........................................................................................15

22
23
24
25
26
27
28

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1    I.      **INTRODUCTORY STATEMENT**

2          Plaintiff Lifeway Foods, Inc. ("Lifeway") seeks a sweeping injunction that

3    would require Defendants CocoKefir LLC ("CocoKefir") and Millennium Products,

4    Inc. ("Millennium") to shut down their CocoKefir brand after seven years of sales,

5    promotion, and investment.  Lifeway's motion[1] is based on the premise that the

6    term "kefir" is only used to refer to products that contain dairy milk.  This premise

7    is wrong.  Kefir is a fermenting agent used to ferment a wide range of liquids,

8    including coconut water.  The FDA has never limited "kefir" to dairy products, and

9    Lifeway's cultured milk products and nondairy kefir products like CocoKefir have

10   coexisted in the market for years, if not decades.  Lifeway's false premise is fatal to

11   its claims that CocoKefir is improperly branded or likely to make consumers

12   mistakenly believe it contains milk.

13         The Court should deny Lifeway's motion for at least three reasons.  First, all

14   of Lifeway's claims are time-barred because Lifeway delayed more than six years

15   in bringing this action.  Lifeway admits in its motion that CocoKefir was introduced

16   in 2009, and its vice president declares that he knew of CocoKefir by 2011 and

17   identified CocoKefir as "a competitive threat."  ECF No. 6-2, Miller Decl. ¶ 3.  But

18   demonstrating an exceptional lack of candor, Lifeway neglects to inform the Court

19   that, in 2010 and 2012, *Lifeway sent letters to CocoKefir making the same*

20   *unfounded allegations of false advertising and unfair competition that are in this*

21   *suit*.  CocoKefir's response to both letters was swift and unequivocal—Lifeway's

22   claims were baseless, and, as a result, CocoKefir would "not cease and desist in its

23   use of the term Kefir."  After 2012, Lifeway did not contact Defendants again until

24   September 2016, right before this lawsuit.

25         In an attempt to sidestep its inexcusable delay in filing this suit, Lifeway tells

26

27         [1] Lifeway submitted an *ex parte* application (ECF No. 6) and an amended
     motion (ECF No. 12 & 12-1) in support of its request for a preliminary injunction.
28   For the sake of convenience, they are referred to collectively as one motion.

OPPOSITION TO MOTION FOR
                                                                  PRELIMINARY INJUNCTION
                                                                  2:16-CV-07099-R-JEM

1   the Court—incorrectly—that CocoKefir "dropped out of the market" sometime

2   after receiving a letter from the Food and Drug Administration ("FDA") in 2011,

3   only to resurface years later in 2016.  Lifeway never attempts to support this

4   allegation with evidence, and it is flatly contradicted by: (1) CocoKefir's publicly

5   available social media pages showing its consistent promotion of CocoKefir since

6   2009; (2) the continuous, and steadily growing sales of CocoKefir, including in the

7   same stores that sell Lifeway products; (3) Lifeway's 2012 correspondence with

8   CocoKefir; and (4) the companies' exhibition of their respective goods at the same

9   health products conventions in 2012 and 2013.  Because Lifeway slept on its claims

10  for more than six years, those claims are time-barred:  its state law claims accrued

11  well outside those claims' applicable three- and four-year statutes of limitations,

12  and all of its claims are barred by the defenses of laches and equitable estoppel.

13      Second, even if Lifeway had brought a timely action against Defendants, it

14  still would not succeed on the merits. To prevail on its claims that the CocoKefir

15  brand name constitutes false advertising, Lifeway must establish: (1) the term

16  "kefir" necessarily means a product with dairy milk, (2) Defendants' coconut kefir

17  product has actually deceived or is likely to deceive a substantial segment of

18  consumers into falsely believing their product contains dairy milk, and (3) this

19  deception is likely to affect purchasing decisions—*i.e.*, consumers are likely to buy

20  CocoKefir because they falsely believe it contains dairy milk.  Lifeway cannot

21  make any of these showings.  The term "kefir" is used by consumers and the

22  industry to refer to a fermenting agent and any product—dairy or nondairy—

23  fermented using that agent.  Although Lifeway repeatedly alleges that the FDA has

24  defined the term "kefir" to be a "cultured milk product," the FDA has done no such

25  thing.  It has never adopted a standard of identity for kefir or promulgated any rule

26  that "kefir" can only be used to identify dairy products.

27      Lifeway also attempts to rely on concerns raised in a 2011 FDA warning

28  letter to CocoKefir.  Here, again, Lifeway fails to inform the Court of a key fact—

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1   in 2013, *the FDA sent CocoKefir a letter confirming that all of its concerns had*

2   *been addressed*.  This close-out letter confirms the FDA's view that kefir is not

3   limited to dairy products and the term CocoKefir is not misleading.  What makes

4   omission of this letter especially egregious is the fact that *it is specifically*

5   *referenced in an exhibit Lifeway submits with its motion*.  ECF No. 6-2, Miller

6   Decl. Ex. 1 at 004.[2]  Lifeway makes an eleventh-hour attempt to save its claims

7   with an untimely "survey."  But this "survey" was conducted by Lifeway's

8   attorney, not a qualified expert on consumer surveys.  Below, and in the attached

9   declaration of prominent survey expert Sarah Butler, Defendants demonstrate that

10  Lifeaway's "survey" violates virtually every tenet of reliable survey research.

11       Third, Lifeway fails to establish the three equitable factors—irreparable

12  harm, balance of hardship, and public interest—governing preliminary injunctions

13  under *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008).

14  Lifeway essentially asks the Court to presume that these factors are met from its

15  showing on the merits and the fact that Lifeway and Defendants are competitors,

16  despite binding Ninth Circuit case holding that irreparable harm may not be

17  presumed, speculative, or "grounded in platitudes."  *Herb Reed Enters., LLC v. Fla.*

18  *Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249-50 (9th Cir. 2013).  Lifeway presents no

19  evidence whatsoever that these ex factors favor a preliminary injunction.

20  **II.   BACKGROUND**

21       This case concerns "kefir," a term that is believed to derive from the Turkish

22  word "keif," which means good feeling.  Larsen Decl. ¶ 3.  For more than one

23  hundred years, "kefir" has been used to describe both fermented beverages and the

24  bacteria and yeast that are used to ferment those beverages.  *Id*.  In proper

25  ─────────────────

26  [2] Lifeway's motion also contains numerous other misrepresentations.  For example, Lifeway's original *ex parte* application was premised on the false allegation that Defendants were about to exhibit CocoKefir at Expo East, when

27  Defendants had no such plans; nor did Defendants pay Instagram user Jeannette Ogden, or any other blogger, to promote their products, as Lifeway mistakenly

28  asserts.  Declaration of Michael Larsen ("Larsen Decl.") ¶¶ 30-31.

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

conditions, when these fermenting agents (known as "kefir grains," "kefir culture," or just "kefir") are added to a liquid base, they consume sugars in that base and release vitamins, minerals, and essential amino acids, creating a sour and slightly carbonated taste in the liquid.  *Id.*  Although kefir was initially made with cow's milk or goat's milk, for at least decades people have used kefir grains to ferment other liquids as well, including soy milk, almond milk, coconut milk, coconut water, fruit juice, and even simple sugar water.  *Id.*  Dairy-based kefir drinks and nondairy kefir drinks have coexisted in the market for many years; nondairy kefir brands include Karl's Kefir, Pollock's Kefir Pop, Tonix, Healing Movement, Dr Kefir's, Kevita, and Living Apothecary.  *Id.* ¶ 4, Exs. A-F; Declaration of Jordan Raphael ("Raphael Decl.") ¶ 12, Ex. K.  Many brands sell kefir grains directly to consumers, including Body Ecology, Cultures for Health, Wilderness Family Naturals, and Yo'gourmet, allowing consumers to create their own nondairy kefir drinks.  Larsen Decl. ¶ 5, Exs. G-J.  Nondairy kefirs have been the topic of scientific studies and entire books.  *Id.* ¶ 6, Ex. K.[3]  Indeed, Lifeway discusses a nondairy "kefir beer" product on its website.  Raphael Decl. ¶ 7, Ex. F.

Defendant CocoKefir LLC was founded in 2009 by Michael and Holly Larsen, who, as parents of a young daughter, were interested in the reported benefits of kefir and other probiotics.  Larsen Decl. ¶ 7.  The Larsens began selling a line of nondairy, coconut-based kefir products under the brand name CocoKefir. In 2009, the Larsens registered the domain cocokefir.com and began a Twitter account (www.twitter.com/cocokefir) for their new venture.  *Id.* ¶ 7, Ex. L.  In March 2010, CocoKefir launched a Facebook page (www.facebook.com/

---

[3] *See, e.g.*, J.R. Liu & C.W. Lin, *Production of Kefir from Soymilk With or Without Added Glucose, Lactose, or Sucrose*, 65 J. Food Sci. 716-19 (2000); J.R. Liu et al., *Antitumor Activity of Milk Kefir and Soy Milk Kefir in Tumor-Bearing Mice*, 44 Nutrition & Cancer 183-87 (2002); K. Rodrigues et al., *A Novel Beer Fermented by Kefir Enhances Anti-Inflammatory and Anti-Ulcerogenic Activities Found Isolated in Its Constituents*, 21 J. Functional Foods 58-69 (2016).

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1    TulasCocoKefir) to promote its brand and its products.  *Id.* ¶ 7, Ex. M.  In 2012,

2    CocoKefir also launched a blog to share stories regarding the brand.  *Id.* ¶ 7, Ex. N.

3         Plaintiff Lifeway is a producer of dairy-based cultured milk products.  On

4    June 3, 2010, less than one year after CocoKefir was launched, Lifeway sent

5    CocoKefir a cease-and-desist letter.  *Id.* ¶ 10, Ex. Q.  Lifeway contended that the

6    term "kefir" could only be used on dairy products and that CocoKefir's use of the

7    word "kefir" on a nondairy product constituted false advertising.  *Id.*  Lifeway

8    demanded that CocoKefir "immediately cease and desist from use of the word

9    'kefir' as well as any other confusingly similar terms," and threatened "to take any

10   and all such action as necessary" if CocoKefir did not comply.  *Id.*

11        CocoKefir promptly responded to Lifeway's letter on June 7, 2010.  *Id.* ¶ 11,

12   Ex. R.  CocoKefir noted that the FDA (by Lifeway's own admission) had not

13   adopted a standard of identity for kefir, and that kefir "is commonly understood as a

14   probiotic culture and not as a term specific to milk-based beverages."  *Id.*

15   CocoKefir told Lifeway its claims of false advertising and unfair competition were

16   "baseless" and that, as a result, CocoKefir would not cease and desist using "kefir"

17   on its labeling and in its communication materials.  *Id.*

18        In September 2012, both CocoKefir and Lifeway exhibited products at

19   National Products Expo East, an annual industry trade show in Baltimore.  *Id.* ¶ 13.

20   CocoKefir never heard from Lifeway during the event.  *Id.*

21        On October 2, 2012, after nearly sixteen months of silence, Lifeway again

22   wrote to CocoKefir.  *Id.* ¶¶ 12-13, Ex. S.  This letter mirrored Lifeway's June 3,

23   2010 letter nearly word-for-word and ignored CocoKefir's June 7, 2010 response.

24   *Id.* ¶ 13, Ex. S.  It concluded with the same cease-and-desist demand and threat "to

25   take any and all such action as necessary" if CocoKefir did not comply.  *Id.*

26        Mr. Larsen again promptly responded on behalf of CocoKefir on October 10,

27   2012.  *Id.* ¶ 14, Ex. T.  CocoKefir noted the duplicative nature of Lifeway's letter

28

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1    and again responded that Lifeway's claims were baseless and that it would not

2    cease and desist using the term "kefir." *Id.* Lifeway did not respond. *Id.* ¶ 15.

3        In March 2013, both CocoKefir and Lifeway exhibited products at another

4    trade show—Natural Products Expo West in Anaheim. *Id.* ¶ 16, Exs. U & V.

5    CocoKefir never heard from Lifeway during the event.

6        From CocoKefir's founding in 2009 to the present, sales of CocoKefir

7    products have been continuous and have grown steadily. By the end of 2010,

8    CocoKefir products were available in 13 retail store locations in Minnesota and one

9    in South Dakota, as well as on the CocoKefir website (which has sold direct to

10   consumers ever since). *Id.* ¶ 8, Ex. O. By 2011, CocoKefir's distribution increased

11   to more than 70 retail stores in 14 states across the United States. *Id.* CocoKefir's

12   retail store distribution expanded to 18 states in 2012 and to 28 states in 2013. *Id.*

13   During this time, CocoKefir and Lifeway products were sold in the same stores. *Id.*

14   ¶ 32, Ex. JJ. By 2015, CocoKefir's distribution had expanded to more than one

15   hundred retail store locations across the United States. *Id.* ¶ 8, Ex. O.

16       In March 2016, Defendant Millennium, another probiotic beverage company,

17   acquired CocoKefir and all of its goodwill, hiring Mr. Larsen as director. *Id.* ¶¶ 1,

18   9. Even though ownership of the company changed, CocoKefir is still the entity

19   that makes and sells CocoKefir products. *Id.* ¶ 9. Today, CocoKefir products are

20   sold in the original bottle design as well as in a redesigned bottle that conforms

21   with the styling of Millennium's other probiotic products. *Id.* ¶ 9, Ex. P. As with

22   the previous bottle, the redesigned design label displays the CocoKefir brand name,

23   right above the term "living coconut water"; it is also designated as "Vegan" and

24   does not list milk as an ingredient:

25

26

27

28

6

1

2

3

4

5

6

7

8

9

10

11

 

12  Larsen Decl. ¶ 9, Ex P.

13        Defendants never heard from Lifeway after its 2012 letter until September

14  14, 2016, when they received another demand letter from Lifeway that was nearly

15  identical to Lifeway's 2010 and 2012 letters.  *Id.* ¶ 28, Ex. GG.  A few days later,

16  Lifeway filed this lawsuit and its *ex parte* application.  In its Complaint, Lifeway

17  brings three claims:  (1) false advertising and unfair competition under the Lanham

18  Act; (2) unfair competition under Cal. Bus. & Prof. Code § 17200, and (3) false

19  advertising under Cal. Bus. & Prof. Code § 17500.  ECF No. 1 ¶¶ 45-75.  Lifeway

20  premises these claims on its allegation that "kefir" products must include dairy

21  milk, and therefore CocoKefir, a dairy-free product, is falsely advertised.  In its *ex*

22  *parte* application, Lifeway alleged that Defendants planned to "launch" CocoKefir

23  and "aggressively advertise" it at 2016 Expo East, a trade show occurring from

24  September 22-24, 2016.  ECF No. 6 at 21.  The Court denied Lifeway's *ex parte*

25  application, writing that it was "not convinced that allowing Defendant to launch

26  the product at the Expo East Natural Foods trade show will irreparably harm

27  Plaintiff."  ECF No. 9 at 2.  Contrary to Lifeway's allegations, Defendants never

28  intended to promote CocoKefir or any other product at Expo East—a fact that was

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1   easily known to Lifeway from the exhibitor list on Expo East's website, which lists

2   neither Millennium nor CocoKefir. Larsen Decl. ¶ 30, Ex. II.

3        On October 10, 2016, Lifeway filed an untimely supplemental motion for

4   preliminary injunction, attaching an attorney-conducted consumer "survey"

5   purporting to show confusion.[4]  In its motion, Lifeway adds a new allegation (never

6   raised in its Complaint) that the words "supports healthy digestion" on the

7   CocoKefir label are "an unapproved health claim." ECF No. 12-1 at 15.[5]

8

## III.  PLAINTIFF'S MOTION FAILS TO MEET ANY OF THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

9

10       A preliminary injunction is "an extraordinary and drastic remedy, one that

11  should not be granted unless the movant, *by a clear showing*, carries the burden of

12  persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).  To prevail on

13  its motion, Lifeway must make four showings: (1) it is likely to succeed on the

14  merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief;

15  (3) the balance of equities tips in its favor; and (4) an injunction is in the public

16  interest. *Winter,* 555 U.S. at 20. These requirements are applied rigorously in false

17  advertising cases to "ensure vigorous competition and to protect legitimate

18  commercial speech." *Munchkin, Inc. v. Playtex Prods., LLC*, No. CV 11-00503

19  AHM (RZx), 2011 WL 2174383, at *3 (C.D. Cal. Apr. 11, 2011).  As Defendants

20  demonstrate below, Lifeway fails to satisfy any of these requirements.

21       ### A.  Lifeway's Claims Are Time-Barred

22       "The plaintiff's burden of showing a likelihood of success on the merits

23  includes the burden of showing a likelihood that it would prevail against any

24  [4] Lifeway's deadline to file such a motion was October 7, 2016.  Under L.R. 6, supplemental motions are due 28 days before the hearing date.  Because

25  October 10, 2016 was a federal holiday—Columbus Day—Lifeway's supplemental brief was due on October 7—the first day before October 10 that is not a Saturday,

26  Sunday, or holiday. *See* Fed. R. Civ. P. 6(a)(1)(C) & (a)(5).

27  [5] Lifeway also alleges it never received a response to its 2016 letter.  Defendants attach both their response and fax confirmation of its delivery to Lifeway's counsel

28  on September 15, 2016.  Larsen Decl. ¶ 29, Ex. HH; Raphael Decl. ¶ 4, Ex. C.

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1    affirmative defenses raised by the defendant." *Dr. Seuss Enters. v. Penguin Book*
2    *USA*, 924 F. Supp. 1559, 1562 (S.D. Cal. 1996).  Lifeway cannot succeed on the
3    merits for the simple reason that all of its claims are time-barred.  More than six
4    years ago, Lifeway wrote CocoKefir, asserted that CocoKefir's use of the term
5    "kefir" on a nondairy product constituted false advertising and unfair competition,
6    and threatened litigation if CocoKefir did not cease and desist.  Larsen Decl. ¶ 10,
7    Ex. Q.  CocoKefir's response was unequivocal:  Lifeway's allegations were
8    meritless, and it would not comply with Lifeway's demands.  *Id.* ¶ 11, Ex. R.
9    Because Lifeway sat on its claims for more than six years, Lifeway's state law
10   claims are expressly barred by applicable statutes of limitations, and all of
11   Lifeway's claims are barred by the doctrines of laches and equitable estoppel.

12                    1.    Lifeway's State Law Claims Are Statutorily Barred

13        Lifeway's state law false advertising claim is subject to a three-year statute of
14   limitations.  *See* Cal. Civ. Proc. Code § 338; *Yumul v. Smart Balance, Inc*., 733 F.
15   Supp. 2d 1117, 1130 (C.D. Cal. 2010).  Lifeway's state law unfair competition
16   claim is subject to a four-year statute of limitations.  Cal. Bus. & Prof. Code
17   § 17208.  Under California law, this limitations period runs when a plaintiff "is put
18   on inquiry notice: when the circumstances would lead a reasonable person to
19   suspect wrongdoing." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 534
20   (N.D. Cal. 2012); *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1110-11 (1988).

21        Here, Lifeway's claims accrued no later than June 2010, when it sent
22   CocoKefir a cease-and-desist letter contending that CocoKefir's use of the term
23   "kefir" constituted "an unfair or deceptive trade practice and/or false advertising."
24   Larsen Decl. Ex. Q.  Because it delayed six years in bringing this action, both state
25   law claims are barred.  Lifeway does not contend that any tolling of or exception to
26   these statutes applies.  Nor can it, since "[t]he burden is on the plaintiff to allege
27   that his or her claims fall within the applicable statute of limitations or survive
28   based on an exception to limitations period"—and this showing must be made in

                                              9

Lifeway's Complaint, which recites no such allegations. *Saterbak v. Nat'l Default Servicing Corp.*, No. 15CV956-WQH-BGS, 2016 WL 4430922, at *7 (S.D. Cal. Aug. 22, 2016); *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007). Nor is Lifeway saved by its allegation that CocoKefir "disappeared from the market" and was only recently "relaunched." Lifeway offers no evidence to support this assertion, and it is easily disproven by Lifeway's 2012 demand letter to CocoKefir; the parties' mutual attendance at multiple trade shows; and the steady stream of news about CocoKefir that was publicly available on CocoKefir's Facebook page, Twitter feed, and blog. Larson Decl. ¶¶ 7, 13, 16, Exs. L-N, S. Lifeway's state law claims are clearly barred.[6]

### 2.    All Claims Are Barred by Laches and Equitable Estoppel

Laches applies to both Lanham Act and state law claims, and bars a claim when a plaintiff unreasonably delays in filing suit and the defendant would suffer prejudice caused by the delay if the suit were to continue. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). To determine whether laches applies, courts look to the most analogous statute of limitations—"if any part of the alleged wrongful conduct occurred outside of the limitations period, courts presume that the plaintiff's claims are barred." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006). In the context of a Lanham Act claim for false advertising, the analogous limitations period is three years. *Jarrow*, 304 F.3d at 838. Laches even applies to "ongoing" violations and claims for prospective injunctive relief. *Id.* at 837, 840.

*Jarrow* is directly on point here. In *Jarrow*, the plaintiff and the defendant

---

[6] Lifeway cannot contend that the limited "continuing violations" equitable exception applies to its state law claims. This doctrine was "developed and applied mostly in the area of employment and housing discrimination claims" and has been specifically rejected in the context of false advertising and unfair competition claims when, as here, a plaintiff has made a cease-and-desist demand outside the limitations period. *See Free Kick Master LLC v. Apple Inc.*, No. 15-CV-3403-PJH, 2016 WL 777916, at *8 (N.D. Cal. Feb. 29, 2016).

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1  competed in the sale of probiotic supplements.  *Id*. at 832.  The plaintiff accused the

2  defendant of making false and misleading claims in its product labeling and

3  literature.  *Id.*  The defendant continued to make the same claims and leave its

4  product labels unchanged.  *Id.*  Despite its threat of litigation, the plaintiff waited

5  more than six years to file suit, ultimately bringing the same three claims Lifeway

6  asserts against Defendants in this case (*i.e.*, a Lanham Act false advertising claim

7  and § 17200 and § 17500 claims).  *Id*. at 832-33.  The Ninth Circuit found that

8  laches barred all of the plaintiff's claims, including its claims for prospective

9  injunctive relief.  *Id*. at 839-40.

10  　　　　Because Lifeway commenced this suit well outside the three-year analogous

11  limitations period, laches is presumed to apply.  Therefore, unreasonable delay and

12  prejudice "must be inferred, absent rebuttal evidence."  *A.C. Aukerman Co. v. R. L.*

13  *Chaides Constr. Co*., 960 F.2d 1020, 1037 (Fed. Cir. 1992).  Here, as in *Jarrow*,

14  Lifeway's six-year delay is "more than double the time available to file suit under

15  the analogous limitations period."  304 F.3d at 839.  Numerous courts evaluating a

16  laches defense have held that such a delay is unreasonable.  *See Fitbug Ltd. v.*

17  *Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1193-95 (N.D. Cal. 2015) (four-year delay

18  unreasonable); *Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*, No. C13-

19  2174RSM, 2015 WL 2345183, at *5 (W.D. Wash. May 14, 2015) (three-year delay

20  unreasonable).  And nothing in this case even remotely suggests Lifeway's delay

21  was reasonable.  Lifeway willfully ignores its 2010 and 2012 demand letters, which

22  CocoKefir firmly rebuffed, and provides no "legitimate excuse" for its delay.

23  *Jarrow,* 304 F.3d at 839; *Free Kick Master,* 2016 WL 777916, at *7.

24  　　　　Moreover, Defendants will suffer enormous prejudice from Lifeway's

25  inexcusable delay if the suit were to proceed.  Defendants have dedicated seven

26  years and significant resources promoting their CocoKefir brand and name, making

27  it a "central part" of their product identity.  *Jarrow,* 304 F.3d at 839-40.  Where, as

28  here, a plaintiff stands idly by for years and then tries to make the defendant

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1  "abandon its long-term investment in its [product] presentation" to the public,

2  courts routinely find expectations-based prejudice.  *Id*. at 840; *see also Eat Right*

3  *Foods*, 2015 WL 2345183, at *6; *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d

4  187, 192 (2d Cir. 1996).  Millennium has also been prejudiced, as it may have not

5  purchased CocoKefir and the CocoKefir brand had Lifeway timely filed suit.

6  Defendants would also suffer evidentiary prejudice because the passing of time has

7  made it more difficult for Defendants to uncover additional evidence to disprove

8  Lifeway's claims.  *See Free Kick Master*, 2016 WL 777916, at *7.  Lifeway's

9  claims are barred under laches.

10      Lifeway's claims are also barred by the doctrine of equitable estoppel, which

11  applies where (1) a plaintiff knew of a claim, (2) a plaintiff's action or failure to act

12  led defendant to believe the plaintiff would not enforce the claim, and (3) the

13  defendant relied on plaintiff's action or inaction to its detriment.  *See Ultimax*

14  *Cement Mfg. Corp. v. CTS Cement Mfg. Corp*., 856 F. Supp. 2d 1136, 1155-56

15  (C.D. Cal. 2012) ("inaction" or "silence" may constitute conduct that leads the

16  defendant to "reasonably infer that [the plaintiff] does not intend to enforce [its

17  rights]").  The first element is beyond dispute—Lifeway knew of its claims against

18  CocoKefir by 2010.  The second element is also clearly met.  Where a claimant

19  threatens a defendant "with prompt enforcement . . . and then does nothing," the

20  defendant may reasonably conclude that "the objection has been abandoned."

21  *Jensen v. W. Irrigation & Mfg., Inc.*, 650 F.2d 165, 169 (9th Cir. 1980); *Aspex*

22  *Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310-14 (Fed. Cir. 2010).

23  The third element—detrimental reliance—also is met.  As explained above,

24  CocoKefir invested years of time, money, and effort into building its company

25  around the CocoKefir name, and Millennium acquired CocoKefir in reliance on the

26  fact that Lifeway had abandoned its allegations.  This is classic detrimental

27  reliance.  *E.g.*, *Ultimax*, 856 F. Supp. 2d at 1156 (defendants spent time

28  "developing, marketing, and selling" a product while "relying on Plaintiffs'

12

apparent decision" not to sue); *Aspex*, 605 F.3d at 1312 (equitable estoppel where defendant developed its business in reliance on plaintiff's silence after letters).[7]

### B. Lifeway Is Not Likely to Succeed on the Merits

Even if Lifeway had promptly commenced this action, it would still not succeed on the merits of its claims.  To establish a probability of success on the merits of its Lanham Act claim, Lifeway must demonstrate (1) a false or misleading statement by Defendants, (2) the statement actually deceived or has a likelihood of deceiving a "substantial segment" of consumers, (3) the alleged deception is material, (4) Defendants caused their statement to enter interstate commerce, and (5) Lifeway has been or is likely to be injured as a result of Defendants' statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Munchkin*, 2011 WL 2174383, at *3.  Lifeway's state law claims are "substantially congruent" to its Lanham Act claim.  *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12--03762-SI, 2014 WL 572290, at *3 (N.D. Cal. Feb. 11, 2014).

#### 1. Lifeway's Allegations Regarding Use of the Term "Kefir" Fail

Lifeway's allegations that Defendants' use of the term "kefir" violates Federal Food, Drug, and Cosmetic Act ("FDCA") labeling requirements fail for the simple reason that the FDA has already rejected them.  Congress expressly precluded private enforcement of the FDCA.  21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); *see Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).  Although this bar on private enforcement does not

---

[7] Millennium's acquisition of CocoKefir LLC and the CocoKefir brand does not save Lifeway's claims, because CocoKefir is still the entity that makes and sells CocoKefir products,  Larsen Decl. ¶ 9, and because CocoKefir's defenses apply equally to successor-in-interest Millennium. *See Boys Town, U.S.A., Inc. v. World Church*, 349 F.2d 576, 579 (9th Cir. 1965) ("[W]here there is a privity between the party who could, if sued, plead the statute and the party offering to plead it, the latter may plead it to save his property"; *Reese v. AT & T Mobility II, LLC*, No. 2:13-CV-05198-ODW, 2014 WL 1873046, at *4 (C.D. Cal. May 9, 2014) (equitable defenses are available to successors-in-interest).

1   preclude all Lanham Act claims premised on food labeling, a Lanham Act claim

2   premised on alleged violations of the FDCA "cannot proceed . . . without a clear

3   statement by the FDA."  *See JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp. 3d

4   992, 1004 (C.D. Cal. 2014).  Otherwise, courts would be forced to "arrogate the

5   authority of the FDA to decide, at least in the first instance, the legality or illegality

6   of marketing a particular substance."  *Id.*

7           Here, the FDA has already determined that Defendants' use of the term

8   "kefir" does ***not*** violate its regulations.  On November 22, 2011, the FDA sent

9   CocoKefir a warning letter that, among other things, stated a concern that the

10   CocoKefir name "may potentially be misleading because it appears to imply that

11   the product is a dairy beverage."  Larson Decl. ¶ 18, Ex. X.[8]  CocoKefir promptly

12   responded, writing:

13                  We understand and share FDA's interest in avoiding consumer

14                  confusion regarding the name of our product.  We believe, however,

15                  that the name "CocoKefir" is not and will not be misleading to

16                  consumers.  The word "Kefir" is commonly and commercially used to

17                  refer to non-dairy products partially fermented with a certain typical

18                  set (or sets) of common bacterial and fungal strains.  The term "kefir"

19                  is not defined in regulations and, in their absence, the market use of

20                  this term to cover a variety of products is compelling evidence of

21                  consumers' broad understanding of "kefir" products.

22   *Id.* ¶ 19, Ex. Y.

23           On June 3, 2013, the FDA issued a close-out letter informing CocoKefir that

24   "it appears you have addressed all the violations contained in this Warning Letter."

25   *Id.* ¶¶ 23-24, Exs. AA & CC.  Lifeway ignores this letter, even though it is

26   _____

27   [8] Indeed, Lifeway's attempt to rely on this FDA exchange to support its claims is
    surprising, as it is no stranger to FDA scrutiny.  Lifeway has itself received warning
    letters from the FDA due to perceived violations and is even subject to a consent
28   decree due to such violations.  Raphael Decl. ¶¶ 4-5, Exs. D & E.

OPPOSITION TO MOTION FOR
                                                         PRELIMINARY INJUNCTION
                                                         2:16-CV-07099-R-JEM

1   expressly referenced in an exhibit Lifeway filed in support of its motion.  ECF No.

2   6-2, Miller Decl. Ex. 1 at 004.  It is thus clear that the FDA withdrew its concerns

3   regarding "CocoKefir" and determined it was not misleading.  The FDA also sent a

4   2014 letter acknowledging other coconut kefirs in the market.  *Id*. ¶ 25, Ex. DD.

5           Even if it were proper for Lifeway to dispute the FDA's determination,

6   Lifeway's allegation fails because CocoKefir complies with all FDA labeling

7   requirements.  The FDA has authority under the FDCA to set "standards of

8   identity" for food and supplement products—*i.e.*, what ingredients a product must

9   contain, which ingredients it may contain, and manufacturing requirements.  21

10  U.S.C. § 341.  Although the FDA has promulgated more than 300 standards of

11  identity for food products, *see* 21 C.F.R. §§ 130–169, it has never set a standard of

12  identity for kefir.  Nor, for that matter, is there a legally recognized definition for or

13  standard of identity for probiotic beverages.  Because there is no standard of

14  identity applicable to CocoKefir, it must be labeled by the "common or usual name

15  of the food" or an "appropriately descriptive term."  21 C.F.R. § 101.3(b).  Here,

16  "CocoKefir" accurately describes a probiotic beverage of coconut water and kefir

17  cultures, and its ingredients (*e.g.*, young coconut water and probiotic cultures) are

18  properly labeled.

19          Lifeway's argument that the FDA's standard of identity for "cultured milk"

20  somehow applies here is backward.  CocoKefir is not a cultured milk and it is not

21  labeled as a cultured milk.  And the cited FDA standard of identity is actually

22  consistent with Defendants' use of "kefir," because it references "kefir" as an

23  example of a fermenting agent and never uses the term as an acceptable synonym

24  for "cultured milk."  21 C.F.R. §  131.112(f).  In other words, under these

25  regulations, *Lifeway*'s products would be mislabeled if they were merely labeled

26  "kefir" rather than "cultured milk" or "kefir cultured milk."  *Id*.

27          Lifeway's argument that Defendants' dairy-free, coconut-based product is

28  mislabeled unless it meets the requirements for "cultured milk" is similar to arguing

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

that a "soy milk" product is mislabeled unless it contains and meets the standard for

cow's milk—an argument that has been expressly rejected in at least two cases. *See*

*Gitson v. Trader Joe's Co.*, No. 13-cv-01333-VC, 2015 WL 9121232, at *1-2 (N.D.

Cal. Dec. 1, 2015); *Ang v. Whitewave Foods Co.*, No. 13-cv-1953, 2013 WL

6492353, at *4 (N.D. Cal. Dec. 10, 2013).  In *Gitson*, the court rejected the

plaintiff's argument that soy milk was mislabeled because:  "[T]hat the FDA has

standardized milk does not categorically preclude a company from giving any food

product a name that includes the word 'milk.'  Rather . . . the standardization of

milk simply means that a company cannot *pass off* a product as 'milk' if it does not

meet the regulatory definition of milk."  2015 WL 9121232, at *2.  Here,

Defendants are not representing CocoKefir as "cultured milk"—on the contrary,

CocoKefir's labeling makes clear that it is a nondairy product.[9]

      For these reasons, Lifeway cannot establish that Defendants made a literally

false statement by using the term "kefir" in their labeling.  Nor can Lifeway

establish that Defendants' use of kefir is likely to mislead consumers.  This requires

Lifeway to submit ***extrinsic evidence*** establishing that this use is likely to cause

confusion among a ***substantial segment*** of consumers.  *CKE Rest. v. Jack in the

Box, Inc.*, 494 F. Supp. 2d 1139, 1144 (C.D. Cal. 2007); *Surefire, LLC v. Advanced

Armament Corp.*, No. SA CV 08-1405 DOC (RNBx), 2009 WL 10654598 , at *4

(C.D. Cal. Apr. 13, 2009).  Lifeway provides no evidence that reasonable

consumers are likely to mistakenly believe CocoKefir is a dairy product.  Indeed,

the evidence is to the contrary—the term kefir is used by consumers and the

---

[9] Lifeway's reliance on the Codex Alimentarius is even more misplaced.  The Codex does ***not*** define kefir as a dairy product; on the contrary, it defines kefir as a "[s]tarter culture prepared from kefir grains" and is therefore consistent with ***Defendants'*** use of the term on a nondairy product fermented using kefir culture. Raphael Decl. ¶ 2, Ex. B (Codex Stan 243-2003 § 2.1).  Furthermore, the Codex has no legal effect in the United States; it merely provides recommendations for food safety standards that member countries, like the United States, may or may not apply in their national legislation.  *Id.*

16

industry to refer to both nondairy and dairy products.  Larsen Decl. ¶¶ 3-6, Exs. A-K.  As the FDA has acknowledged, several third parties use the term kefir to refer to nondairy coconut kefirs, including CocoKefir.  *Id.* ¶ 25, Ex. DD.  Lifeway itself has used the term kefir to refer to beer made from kefir grains—a nondairy product.  Raphael Decl. ¶ 7, Ex. F.  And a single look at the CocoKefir label unambiguously notifies consumers that it is a nondairy product: (1) the term "Coco" in the brand name refers to the coconut water base of the kefir; (2) the term "Kefir" in the brand name draws attention to the kefir grains from which the product is made; (3) the label states "living coconut water," again highlighting its nondairy base; (4) the product is labeled "Vegan" (*i.e.*, containing no products of animal origin); and (5) the ingredients list "young coconut water" and "probiotic cultures" and no dairy products.  Larsen Decl. ¶¶ 9, 33, Ex. P.  Given the numerous clear terms communicating that CocoKefir is ***not*** a dairy product, "it is simply implausible that a reasonable consumer would mistake" it for a product made "with dairy milk from a cow."  *Ang*, 2013 WL 6492353, at *4.

Lifeway does not prove otherwise.  Although CocoKefir and Lifeway's products have coexisted in the market for more than six years, Lifeway submits no evidence of any actual consumer confusion concerning the CocoKefir brand name, let alone confusion among a substantial segment of consumers.  Lifeway puts unfounded reliance on a list of comments on a single Instagram post by a food blogger unaffiliated with Defendants.  ECF No. 6 at 10-14; Larsen Decl. ¶ 31.  None of these comments suggest that consumers mistakenly think that CocoKefir is a ***dairy*** product.  Rather, they reflect the fact that consumers use "kefir" to refer both to dairy and nondairy products.  Indeed, one commenter explicitly identifies the product as "coconut kefir."  ECF No. 6-2, Ex. 3.  This is grossly insufficient to show likelihood of confusion among a ***substantial segment*** of consumers.  *See Southland*, 108 F.3d at 1139; *Surefire*, 2009 WL 10654598, at *5-6.

After presenting no expert consumer survey with its *ex parte* application,

17

Lifeway's untimely amended motion relies on a "survey" that appears to have been conducted on a Google website by Lifeway's attorneys.  ECF No. 12-4.  This survey, which was attached to an attorney declaration with no explanation of what it is or how it was conducted, consists of:  (1) a statement that "Kefir is commonly understood to be a dairy beverage of fermented milk from cows, sheep, or goats," followed by (2) the question "Does the product below [referencing a tiny image of a CocoKefir bottle] contain milk?"  ECF No. 12-4 at 18.[10]

This so-called "survey" is inadmissible and provides no support for Lifeway's allegations.  To be admissible, a survey must be conducted "according to accepted scientific principles."  *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878-79 (C.D. Cal. 2013).  *See also* Shari S. Diamond, *Reference Guide on Survey Research*, in REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 359-418 (Fed. J. Center 3d ed. 2011) ("Diamond").  As Defendants' survey expert Sarah Butler[11] explains, Lifeway's "survey" violates virtually every single one of these precepts:

*First, the survey was conducted by Lifeway's counsel, not a qualified survey expert,* "which goes against the guidance of key treatises and compromised the objectivity of the study."  Declaration of Sarah Butler ("Butler Decl.") ¶¶ 8a., 17-18; *Spraying Sys. Co. v. Delavan, Inc.*, 762 F. Supp. 772, 783 n.11 (N.D. Ill. 1991) (attorney-conducted survey "tend[s] to create bias").

*Second, the attorney survey's design is blatantly leading and biased.*  By telling respondents that kefir "is commonly understood to be a dairy beverage of fermented milk," it clearly "suggest[ed] to respondents . . . the correct answer."  Butler Decl. ¶ 23.  It also failed to provide a "don't know" option, further

---

[10] Not surprisingly, 37% of respondents who were first told that "Kefir is commonly understood to be a dairy beverage" responded that a label they were shown with the word "kefir" on it contained milk.  What is surprising is that 63% of respondents who took this blatantly leading survey *did not*.

[11] Although Defendants engaged Ms. Butler to offer her expert opinions regarding Lifeway's "survey," Ms. Butler did not conduct her own survey because of extreme time constraints, as local rules provided Defendants with only seven days to respond to Lifeway's supplemental motion and their proffered "survey."

improperly signaling "that the correct answer is 'yes.'"  *Id*. ¶ 24; *see CKE*, 494 F. Supp. 2d at 1144-45 (rejecting survey due to use of biased questions).

*Third, the survey targeted the wrong population*.  The proper population for false advertising surveys is "purchasers or prospective purchasers of products like CocoKefir."  Butler Decl. ¶¶ 8b., 19-22.  Lifeway's attorneys never even attempted to qualify respondents who met this definition and instead appear to have targeted "adult Google users" with no regard for whether they are purchasers of CocoKefir-type products.  *Id*. ¶ 8b.; Raphael Decl. ¶ 12, Ex. L.  As Professor Diamond teaches, "[a] survey that provides information about a wholly irrelevant population is itself irrelevant."  Diamond at 377.

*Fourth, the survey failed to use a control.*  A survey testing whether reasonable consumers believe that CocoKefir contains milk must have a control—such as a second question with a different label without the term "kefir"—to filter out confusion caused by factors other than use of this term.  Butler Decl. ¶¶ 8d., 25-28; *see Reinsdorf*, 922 F. Supp. 2d at 878-79 (excluding survey without controls).

*Fifth, the survey failed to replicate marketplace conditions.*  This is another key requirement of reliable survey research.  Butler Decl. ¶¶ 8e., 29-30.  Respondents, however, were shown only a small front-facing image of a CocoKefir bottle, and not any of the other label elements they would see when purchasing in a store (such as other angles of packaging and label, nutrition panel, or ingredients).  *Id*. ¶¶ 29-30.  This, too, is improper because it placed undue emphasis on the portion of the label that displayed the term "kefir," "and led [respondents] to select the response option supporting Plaintiff's position."  *Id*. ¶ 30.

Where a proposed survey exhibits "such gross indifference to the scientific method," district courts will exclude it as unreliable and lacking any probative value. *Vigil v. Michelin N. Am., Inc.*, No. EP-05-CV-001-KC, 2007 WL 2778233, at *11 (W.D. Tex. Aug. 23, 2007); *see also Marlo v. UPS*, 251 F.R.D. 476, 485-86

1    (C.D. Cal. 2008); *CKE*, 494 F. Supp. 2d at 1144-45.  The Lifeway attorney survey

2    is one such survey, and should be disregarded in its entirety.  Butler Decl. ¶ 9.

3          Finally, Lifeway nowhere mentions—let alone satisifies—the ***materiality***

4    element of its claim.  To establish the materiality of Defendants' allegedly

5    deceptive labeling of its product as a kefir, Lifeway would have to satisfy two

6    requirements: first, Lifeway must prove consumers understand the term "kefir" to

7    refer exclusively to dairy products; and second, Lifeway must prove that

8    Defendants' use of the term "kefir" on the CocoKefir product is likely to influence

9    consumers' purchasing decisions.  *See Southland*, 108 F.3d at 1139.  Lifeway

10   provides no extrinsic evidence—survey or otherwise—addressing either

11   requirement.  *See id.* at 1140 ("Reactions of the public are typically tested through

12   the use of consumer surveys.").  Accordingly, Lifeway fails to satisfy this element

13   for showing likelihood of success on its claims.

14               2.    Lifeway's Allegations of Unauthorized Health Claims Fail

15         In tacit recognition of the weakness of its "kefir" claims, Lifeway includes in

16   its untimely amended motion a new allegation—that the words "supports healthy

17   digestion" represents an "unauthorized health claim."  ECF No. 21-1 at 15-17.  This

18   allegation is equally meritless.  As an initial matter, as noted above, only the FDA

19   can determine whether a product and its labeling meet FDA regulations, and this

20   determination "involves complex issues of history, public safety, and administrative

21   priorities that Congress has delegated exclusively to the FDA."  *JHP Pharm.*, 52 F.

22   Supp. 3d at 1004.  To Defendants' knowledge, Lifeway has never petitioned the

23   FDA to address this issue.  21 C.F.R. §§ 10.25(a) & 10.30.

24         Lifeway seems to suggest that Defendants were required to seek approval

25   from the FDA before using the words "supports healthy digestion" on the label.

26   Not so.  Under FDA regulations, this is a textbook "structure/function" claim.  A

27   structure/function claim is a statement that "claims a benefit related to a classic

28   nutrient deficiency disease and discloses the prevalence of such disease in the

20

1    United States, describes the role of a nutrient or dietary ingredient intended to affect

2    the structure or function in humans, characterizes the documented mechanism by

3    which a nutrient or dietary ingredient acts to maintain such structure or function, or

4    describes general well-being from consumption of a dietary nutrient or dietary

5    ingredient." 21 U.S.C. § 343(r)(6).  Such claims are permitted on food and

6    supplement labels without FDA preapproval.  *See, e.g.*, 65 Fed. Reg. 1000-01, 1033

7    (Jan. 6, 2000).  Furthermore, it is well-settled that "supports healthy digestion" is a

8    proper structure/function claim for probiotics such as Defendants' product.  The

9    FDA has remarked that "a claim that a product 'helps promote digestion' would be

10   a structure/function claim because it does not refer explicitly or implicitly to an

11   effect on a disease state."  *See* 65 Fed. Reg. 1000, 1006 (Jan. 6, 2000).  Courts have

12   also approved such claims.  *E.g., United States v. Bayer Corp.*, No. 07-01 (JLL),

13   2015 WL 5822595, at *12 (D.N.J. Sept. 24, 2015) (approving of a probiotic claim

14   concerning digestive health).  Indeed, Lifeway makes nearly identical claims

15   regarding probiotics on its website.  Raphael Decl. ¶ 8, Ex. G.[12]

16       **C.    The Equitable Factors Do Not Favor an Injunction**

17       Even if Lifeway could establish likelihood of success on the merits—and it

18   clearly cannot—no preliminary injunction should issue because Lifeway has failed

19   ───────────────

20   [12] Lifeway's allegations that Defendants have misrepresented CocoKefir to the
     USPTO and FDA are also baseless.  As Lifeway notes, foods must include a
21   "Nutrition Facts" label and supplements must include a "Supplement Facts" label.
     ECF No. 12-1 at 12.  The FDA regulates both food and supplements and has noted
22   the overlap between these two categories.  FDA, *Claims That Can Be Made for
     Conventional Foods and Dietary Supplements*, Sept. 2003,
23   http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm111
     447.htm.  CocoKefir was labeled as a food from 2009 to 2011 and as a supplement
24   from 2012 to 2016, and thus there is nothing misleading about CocoKefir seeking a
     trademark for supplements in 2015. Larsen Decl. ¶¶ 17, 26-27, Exs. W, EE-FF.
25   Indeed, the FDA found this labeling to be acceptable in its 2013 close-out letter.  *Id.*
     ¶ 23, Ex. AA.  (In 2016, in view of additional FDA guidance, Defendants elected to
26   relabel CocoKefir as a food product and under the appropriate "nutrition facts"
     label.  *Id.* ¶ 27.)  Lifeway's allegations of misrepresentations to the USPTO and
27   FDA are particularly disingenuous given that Lifeway itself has sought to register
     the same trademarks for both food products and dietary supplements.  Raphael
28   Decl. ¶¶ 9-11, Exs. H-J.

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1   to establish that the equitable factors that courts must consider favor an injunction.

2                 1.     <u>Lifeway Has Not Established Irreparable Harm</u>

3        "[P]reliminary injunctive relief is available only if plaintiffs demonstrate that

4   irreparable injury is likely in the absence of an injunction." *Johnson v. Couturier*,

5   572 F.3d 1067, 1081 (9th Cir. 2009) (internal formatting omitted).  The mere

6   possibility of irreparable injury is not enough.  *Winter*, 555 U.S. at 22.

7   Furthermore, the Ninth Circuit has expressly held that in view of *Winter*, a court

8   may not presume irreparable harm from a showing of likely success on the merits.

9   *See Herb Reed*, 736 F.3d at 1242*; see also Leatherman Tool Grp., Inc. v. Coast*

10   *Cutlery Co*., 823 F. Supp. 2d 1150, 1158 (D. Or. 2011) (holding that there is no

11   longer any presumption of irreparable harm in false advertising cases).  *Herb Reed*

12   states that irreparable harm may not be presumed or "grounded in platitudes," and

13   speculative future harm is insufficient—Lifeway must produce evidence of likely,

14   intangible harm.  736 F.3d at1249-50.

15        Tellingly, Lifeway ignores *Herb Reed* entirely in its motion—instead, it

16   relies exclusively on out-of-circuit case law that predates *Herb Reed* and presents

17   no evidence whatsoever of cognizable harm, irreparable or otherwise.  Mot. at

18   19-22.  Lifeway is, in effect, inviting the Court "to reinsert the now-rejected

19   presumption of irreparable harm"—in direct contradiction to binding Ninth Circuit

20   precedent.  *Herb Reed*, 736 F.3d at 1250.  To do so would be error.

21        Lifeway's mere allegations of future diverted sales or loss of market share

22   are insufficient to establish irreparable harm.  *Zeltiq Aesthetics, Inc. v. BTL Indus*.,

23   32 F. Supp. 3d 1088, 1104-05 (N.D. Cal. 2014) (denying preliminary injunction

24   where plaintiff did not present any evidence that it actually lost market share); *see*

25   *also Kane v. Chobani, Inc*., No. 12-CV-02425-LHK, 2013 WL 3776172, at *10

26   (N.D. Cal. July 15, 2013) (rejecting allegations regarding irreparable harm as

27   "vague, entirely speculative, and not warranting an injunction"). And courts have

28   expressly rejected Lifeway's argument that irreparable harm can be proven simply

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1 | by showing competition and a logical connection.  In *Zeltiq*, the court wrote that
2 | "merely showing [a] logical connection and competition is not sufficient in light of
3 | the Supreme Court's 2008 decision in *Winter*."  32 F. Supp. 3d at 1105.

4 |      The "logical connection" Lifeway alleges, in addition to being insufficient to
5 | show irreparable harm, is also meritless.  The two products are immediately
6 | distinguishable:

 

20 | *Compare* Larsen Decl. Ex P (left) *with* Raphael Decl. Ex. M (right)

21 |      Nor can Lifeway reasonably contend that consumers of its dairy-based
22 | products will purchase Defendants' products under the mistaken belief that they are
23 | dairy products:  CocoKefir is clearly labeled as "vegan" and does not list milk or
24 | any dairy product as an ingredient.  Rather, Lifeway's claim is premised on the
25 | fragile notion that Defendants will "create a market" for their nondairy kefir
26 | products and steal customers and "shelf space" from Lifeway.  Even if *Herb Reed*
27 | permitted such a speculative allegation, it is doomed by a simple fact—the feared
28 | nondairy kefir market has existed for years, if not decades.  As discussed above,

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1    dairy and nondairy kefir products have long been sold side-by-side in stores.  *See*

2    *supra* Section II.

3         Furthermore, Lifeway's extensive delay in bringing this action and seeking a

4    preliminary injunction strongly counsels against irreparable harm.  A plaintiff's

5    "long delay before seeking a preliminary injunction implies a lack of urgency and

6    irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374,

7    1377 (9th Cir. 1985).  Courts have found a delay of two months to seven months to

8    negate an assertion of irreparable harm.  *E.g.*, *Essence Imaging Inc. v. Icing Images*

9    *LLC*, No. 2:13-CV-5449-CAS (PLAx), 2014 WL 1384028, at *3 (C.D. Cal. Apr. 9,

10   2014) (delay of seven months suggested no irreparable harm); *Kerr Corp. v. N. Am.*

11   *Dental Wholesalers, Inc.*, No. SA CV 11-0313 DOC (CWx), 2011 WL 2269991, at

12   *3 (C.D. Cal. June 9, 2011) (noting that delay of eight months between

13   commencement of action and motion for preliminary injunction weighed against

14   finding irreparable harm); *Givemepower Corp. v. Pace Compumetrics, Inc.*, No.

15   07cv157 WQH(RBB), 2007 WL 951350, at *7 (S.D. Cal. Mar. 23, 2007) (holding

16   delay of two months, in circumstances of case, negated showing of irreparable

17   harm).  Here, Lifeway's extraordinary delay of more than six years conclusively

18   disproves its allegations of irreparable harm.

19              2.    The Balance of Hardships Weighs Heavily in Defendants' Favor

20        As with *Winter*'s irreparable harm requirement, Lifeway also erroneously

21   asks the Court to presume the "balance of hardships" requirement favors Lifeway

22   from its showing on the merits—*i.e.*, from its allegation that CocoKefir is "an

23   unlawful product."  As discussed above, Lifeway provides no evidence that it will

24   suffer hardship if no preliminary injunction issues.  And Lifeway completely

25   ignores the harm Defendants will suffer if a preliminary injunction were to issue.

26   Because Defendants use the term "kefir" as part of its brand name, the sought-after

27   injunction would force Defendants to shutter a brand it has spent nearly a decade

28   cultivating.  An injunction would also harm Defendants' business reputation by

                                      24

1   creating the perception that it had misled consumers, despite such allegations being

2   unproven (and untrue).  This, in turn, would likely hurt Defendants' relationships

3   with its customers and its third-party distributors.  These reputational harms are

4   difficult to quantify, and will likely not be compensable if and when Defendants

5   ultimately prevail on summary judgment or at trial.  For these reasons, the balance

6   of hardships weighs heavily against a preliminary injunction.

7           3.      A Preliminary Injunction Will Not Serve the Public Interest

8           As with irreparable harm and balance of hardships, Lifeway asks the Court to

9   infer that this factor favors Lifeway from its showing on the first *Winter* factor,

10  citing a single out-of -circuit case that predates both *Winter* and *Herb Reed*.  *See*

11  Mot. at 22 (contending that a preliminary injunction is in the public interest because

12  "it would prevent . . . consumer confusion and deception in the marketplace" and

13  "Lifeway's goodwill in the marketplace").  The Ninth Circuit has expressly rejected

14  arguments that all four *Winter* factors may be "collapse[d] into the merits."  *DISH*

15  *Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011).  Because Lifeway has

16  failed to produce any evidence that an injunction would serve the public interest, its

17  motion should be denied.  Furthermore, the requested preliminary injunction would

18  not serve the public interest, as it would adversely affect the rights of many third

19  parties, including retailers that sell Defendants' products.  Indeed, it is highly likely

20  (and indeed, Lifeway's likely objective) that a preliminary injunction would

21  inequitably discourage retailers from selling Defendants' products, or, for that

22  matter, from selling nondairy kefir products sold by Lifeway's other competitors.

23  Accordingly, injunctive relief should be denied on this ground as well.

24  **IV.    CONCLUSION**

25          Because Lifeway has utterly failed to establish it is entitled to a preliminary

26  injunction, Defendants respectfully request the Court deny Lifeway's motion.[13]

27          [13] Any new evidence or arguments submitted by Lifeway in its reply should be
28  disregarded as untimely.  *Sali v. Univ. Health Servs. of Rancho Springs, Inc*., No.
    CV 14-985 PSG, 2015 WL 12656937, at *11 (C.D. Cal. June 3, 2015).

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
2:16-CV-07099-R-JEM

1

2      Dated:  October 17, 2016

3                                 O'MELVENY & MYERS LLP

By:    */s/ Brian M. Berliner*
                       Brian M. Berliner

Brian M. Berliner (S.B. #156732)
bberliner@omm.com
Jordan Raphael (S.B. #252344)
jraphael@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:    (213) 430-6407

Tim Byron (S.B. #277569)
tbyron@omm.com
Jesse J. Koehler (S.B. #300530)
jkoehler@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  (415) 984-8700
Facsimile:    (415) 984-8701

Attorneys for Defendants
MILLENNIUM PRODUCTS, INC. and
COCOKEFIR LLC

26