RICK L. SHACKELFORD (SBN 151262)
DANIELL K. NEWMAN (SBN 242834)
ADAM SIEGLER (SBN 116233)
GREENBERG TAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (310) 586-7700; Fax: (310) 586-7800
E-mail: *ShackelfordR@gtlaw.com*
       *NewmanDK@gtlaw.com*
       *SieglerA@gtlaw.com*

Attorneys for Plaintiff, Lifeway Foods, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFEWAY FOODS, INC., an Illinois corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>MILLENNIUM PRODUCTS, INC., d/b/a GT'S KOMBUCHA / SYNERGY DRINKS, a California corporation; COCOKEFIR LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 2:16-CV-07099-R-(JEM)<br><br>Hon. Manuel L. Real<br><br>**PLAINTIFF LIFEWAY FOODS, INC.'S REPLY MEMORANDUM IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION**<br><br>TIME:    10:00 a.m.<br>DATE:    November 7, 2016<br>LOCATION:    Spring Street Courthouse<br>                    Courtroom 8, 2nd Floor<br><br><br>Complaint Filed:    September 21, 2016<br>Trial Date:    None Set |

**Table of Contents**

Page

I. INTRODUCTION ................................................................................................1
II. DISCUSSION......................................................................................................2
    A. Kefir Is A Fermented Milk Product -- Defendants' Product Is Not Kefir......2
    B. Defendants' Label Is Deceptive .................................................................5
    C. Consumers Are Likely To Be Deceived .....................................................6
    D. Plaintiff's Claims Are Not Barred by Limitations Or Laches .......................7
    E. Defendants' Defenses Are Barred By Unclean Hands ................................11
    F. Lifeway Will Suffer Irreparable Injury. .......................................................11
    G. The Balance Of Equities Tips Sharply In Favor of Lifeway .......................13
    H. All Of Defendants' Issues Can Be Resolved By An Appropriate Bond.......13
III. CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.* (D. Or. 2016)
   149 F.Supp.3d 1222, 1249 .......................................................................... 12

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
   321 F.3d 878 (9th Cir. 2003) ...................................................................... 14

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ...................................................................... 10

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F.Supp.2d 1058 (N.D.Cal.2000) .......................................................... 12

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) .................................................................... 11

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) .................................................................... 12

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ........................................................... 6, 10, 11

*Johnson v. Ry. Exp. Agency, Inc.*,
   421 U.S. 454 (1975), ..................................................................................... 9

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2002) ........................................................................ 9

*POM Wonderful LLC v. Coca-Cola Co*,
   134 S. Ct. 2228 (2014) .................................................................................. 6

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945) .................................................................................... 11

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010) ...................................................................... 10

*Singh v. Gonzales*,
   491 F.3d 1019 (9th Cir. 2007) ...................................................................... 6

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
    743 F.2d 1039 (4th Cir. 1984) .................................................................. 9

*Yumul v. Smart Balance*,
    733 F.Supp. 2d 1117 (C.D. Cal. 2010) ..................................................... 9

**California Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
    55 Cal. 4th 1185 (2013) ............................................................................ 9

**Federal Statutes & Rules**

The Lanham Act
    15 U.S. Code § 1125 ................................................................... 6, 8, 9, 11

21 C.F.R. § 101.3 ............................................................................................ 5, 6

21 C.F.R. § 131.112(f) ........................................................................................ 3

Fed. R. Civ. P. 65(c) ................................................................................... 13, 14

**Other Authorities**

http://www.fda.gov/Food/IngredientsPackagingLabeling/GRAS/NoticeInventory/ucm413616.htm ................................................................................... 4

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A preliminary injunction should issue in this case because there is a substantial likelihood, based on substantial evidence, that consumers are being deceived and will continue to be deceived, and that Plaintiff Lifeway's business will be harmed, by the sudden, threatened expansion of the distribution and sale (along with associated marketing and promotion) of "CocoKefir," a product which is deceptively described as "Kefir" but contains no milk. In its moving papers, Plaintiff cited to FDA regulations, a recent consumer survey, and multiple dictionaries, all of which consistently demonstrate that Kefir is, by definition, a product that contains milk, and that consumers recognize that fact.

Defendants' Opposition does not refute this. Defendants say that the FDA regulations for Kefir do not apply to their product because it contains no dairy, which is a completely circular argument. Defendants say that Lifeway's survey is flawed, but their $600 per hour survey expert offers no alternative survey results. Defendants say that a few people use the term Kefir to apply to non-dairy products, but they do not dispute that the "dictionary definition" of Kefir – and the one that consumers would find if they looked it up – is that of a dairy product. To top it all off, in Defendants' massive compendium of irrelevant exhibits, they proudly include a website posting that shows "CocoKefir" being ***sold in the dairy section*** – *i.e.*, to compete with Lifeway's dairy Kefir and other dairy products.

Defendants try to escape an injunction by arguing that they have been violating the regulations for so long that they are irrevocably entitled to continue doing so. They have no standing to make this argument, because Millennium did not acquire the product line until March of 2016, and CocoKefir, LLC, a ***Delaware*** company, was not even formed until February of 2016. CocoKefir, LLC, a ***Minnesota*** company, appears to be a separate entity that sold primarily in a few local stores in Minnesota and on its own website. That entity essentially went out of business and is now known as "TnT Fermented Foods."

Unlike the Minnesota company, however, Defendant Millennium markets in the same national chains as Lifeway, which is what precipitated this current application. Moreover, even if CocoKefir (Delaware) had standing, the statute of limitations would not help it against a claim for injunctive relief on continuous accrual of new violations.

Finally, Defendants entirely fail to the address the issue of a Rule 65 bond and fail to offer any competent evidence of harm if the injunction were to issue. On this record, the injunction should issue, with a zero or nominal bond.

## II. DISCUSSION

### A. Kefir Is A Fermented Milk Product -- Defendants' Product Is Not Kefir

Defendants misstate the facts concerning the definition of Kefir and its official definition, and strain to find exceptions to the rule that Kefir is made from milk. As Defendants concede, Kefir was "initially made from milk." And the Encarta dictionary definition in the USPTO File for Defendants' own trademark application confirms that:

> **Kefir** . . . Definition: **drink of fermented cow's milk**: a creamy drink with a low alcohol content made from fermented cow's milk.

(Declaration of Michael Larsen ("Larsen Decl."), Dkt. 17-5, Ex. EE pages 467-68.)

As noted in the moving papers, numerous mainstream dictionaries and search engines reiterate this definition: **Google**: "a sour-tasting drink make from **cow's milk** fermented with certain bacteria"; **Dictionary.com**: "a tart-tasting drink originally of the Caucasus, made from **cow's or sometimes goat's milk**"; **Mirriam-webster.com**: "a beverage of fermented **cow's milk**"; **Wikipedia**: "a fermented **milk drink** made with kefir 'grains'"; **Thefreedictionary.com**: "[a] creamy drink made of fermented **cow's milk**"; **Oxforddictionaries.com**: "a sour-tasking drink make from **cow's milk** fermented with certain bacteria."[1]  And the authoritative, internationally accepted Codex describes

---

[1] Google.com: "Kefir definition"; http://www.dictionary.com/browse/kefir; http://www.merriam-webster.com/dictionary/kefired; https://en.wikipedia.org/wiki/Kefir; http://www.thefreedictionary.com/kefir; https://en.oxforddictionaries.com/definition/us/kefir (emphasis added as to all).

"**Certain Fermented Milks**" as "characterized by specific starter culture(s) used for fermentation as follows: . . . **Kefir**: Starter culture prepared from kefir grains, Lactobacillus kefiri, species of the genera Leuconostoc, Lactococcus and Acetobacter growing in a strong specific relationship." Codex Stan 243-2003, § 2.1.   Consistent with all these authorities, the FDA describes Kefir as a subset of Cultured Milk: *i.e.,* **"kefir cultured milk."** 21 C.F.R. § 131.112(f) (emphasis added).

Defendants **have not cited a single authoritative source** to counter these consistent and universally accepted definitions.  More to the point, Defendants have not shown that substantial numbers of consumers would understand something other than these definitions.  Instead, they rely upon a defense articulated by Humpty Dumpty in Lewis Carroll's *Through the Looking Glass*: "*When I use a word . . . it means just what I choose it to mean—neither more nor less.*"  Defendants, like Mr. Dumpty, are mistaken. Kefir means what the FDA and the dictionaries say it means – fermented milk.

Defendants falsely claim that the FDA has no standard of identity for Kefir and argue that there is no FDA regulation governing what can or cannot be called Kefir. (Opp. at 2).  However, the FDA's definition for cultured milk explicitly references Kefir as the paradigmatic example of such a product:

> The name of the food is "**cultured milk**" . . . The name of the food . . . may be accompanied by a declaration such as a traditional name of the food or the generic name of the organisms used, thereby indicating the presence of the characterizing microbial organisms or ingredients, **e.g., "kefir cultured milk"**. . .

21 C.F.R. § 131.112(f).[2]

---

[2] Similarly, Defendants' references to "soy milk" are just another attempt to distract from the central issue in this case.  The term "milk" and "water" have, over centuries, acquired secondary and more generic meanings.  The terms "coconut milk" and "coconut water" are common enough in ordinary language and specifically convey that they are not dairy milk.  By contrast, Kefir has a specific, historical meaning, enshrined in dictionaries and FDA regulations, that the product contains and is made from dairy products.  In addition, Plaintiff has spent millions of dollars to brand its Kefir in this way, precisely to differentiate it from other, non-dairy foods.

Moreover, the FDA has continued to define Kefir as a cultured milk, in critical communications relating to Substances Generally Recognized as Safe: "The notice informs FDA of the view of Danisco that *L. acidophilus* La-14 is GRAS, through scientific procedures, for use as an ingredient in . . . milk, milk drinks . . . milk products (e.g., butter), **fermented milks (e.g., Kefir,** sour cream, buttermilk) . . .[3] Consistent with these guidelines, the FDA stated in its warning letter that "'Kefir'" is commonly understood to be a dairy beverage of fermented milk from cows, sheep, or goats." (Decl. of Derek Miller ISO Original Motion ("Original Miller Decl."), Dkt. 6-2, Ex. 1.)

Despite the FDA's consistent and longstanding definition of Kefir as a cultured milk product, Defendants make the contorted argument that they are not selling a cultured milk, and therefore can label their products as though they were a cultured milk without having to comply with the attendant FDA rules. (Opp. at 2.) Aside from being a logically circular argument, Defendants' own exhibits prove that this product was marketed *in the dairy section* as if it were a cultured milk product.



(Larsen Decl., Dkt 17-3, Ex. L, p. 57).

---

[3] http://www.fda.gov/Food/IngredientsPackagingLabeling/GRAS/NoticeInventory/ucm413616.htm. Declaration of Rick L. Shackelford in Support of Reply ("Reply Shackelford Decl."), Ex. 3 (emphasis added).

### B. Defendants' Label Is Deceptive

Defendants are right when they state that they are not selling actual cultured milk. That is the precise reason for this action. The FDA has consistently stated that Kefir is cultured milk, in its regulations, its GRAS notices, and its warning letters. The FDA also requires all beverages to display a truthful Ingredients Panel on the bottle. See 21 C.F.R. §101.3. The Lifeway labels truthfully reflect that the product is or contains Kefir cultured milk:

> Ingredients: Pasteurized **cultured organic lowfat milk**, nonfat milk, pectin, Vitamin A Palmitate; Vitamin D3. CONTAINS MILK, GLUTEN FREE.

(Declaration of Derek Miller In Support of Reply ("Reply Miller Decl."), Ex. 4 (Lifeway Ingredients Panel).)

But, according to Defendants' own product labels, "CocoKefir" **does not contain any Kefir**:

> Ingredients: young coconut water, probiotic cultures,** raw cacao, stevia extract, and 100% pure love!!! [sic]
> ** Proprietary Probiotic Blend per 4 fl. oz.

(Reply Miller Decl., Ex. 5 ("CocoKefir" Ingredients Panel).)

To repeat: the front of the label says "CocoKefir" but the actual ingredients do not list or contain any Kefir or cultured milk.[4] Defendants' label is deceptive and illegal on its face. Again, if Defendants truthfully labeled their product "probiotic coconut water," Lifeway would have no objection. But they cannot call it Kefir.

Defendants argue that the "close-out" letters from the FDA somehow endorsed their label as being fully compliant with all applicable regulations, but the letters do not even mention the label. Nor do the "close-out" letters exonerate Defendants from

---

[4] As noted in Lifeway's supplemental memorandum, Dkt. 12-1, but ignored in Defendants' opposition, as to the "Matcha" and "Cocoa," there is no clue as to what bacteria are included, but Kefir is not mentioned anywhere as an ingredient or strain.

continued compliance with truthful labeling requirement in 21 C.F.R. § 101.3. And, as the Supreme Court held in *POM Wonderful LLC v. Coca-Cola Co,* 134 S. Ct. 2228 (2014), even if the label were otherwise compliant, it can still be misleading to consumers and give rise to a Lanham act claim. *Id*. at 2231-32.

### C. Consumers Are Likely To Be Deceived

Not surprisingly, consumers are likely to be deceived by bacteria-infused coconut water sold as Kefir. The standard to bring a Lanham Act false advertising claim is that, "the statement actually deceived or has the tendency to deceive a substantial segment of its audience." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2002) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)) (emphasis added). Given that the FDA and the mainstream dictionaries unanimously describe Kefir as a dairy drink, there is a compelling inference to be drawn that this reflects the mainstream understanding of this product.

The Survey conducted on behalf of Lifeway further confirms that a substantial number of consumers are likely to be deceived into thinking that "CocoKefir" is a dairy product. (Declaration of Rick L. Shackelford in Support of Plaintiff's Supplemental Briefing in Support of Motion for Preliminary Injunction ("Supp. Shackelford Decl."), Dkt. 12-3, Ex. 6.) Defendants' criticism of the survey is ironic: they hired a purported survey expert, at $600 per hour, to criticize Plaintiff's survey, but this same expert declined to conduct her own survey according to the rules that she now asserts. The reason is clear: Defendants do not want to know the answer, and do not want the Court to know the answer. *Singh v. Gonzales*, 491 F.3d 1019, 1024 (9th Cir. 2007) (discussing the generally accepted principle of law that adverse inference can be drawn where evidence exists and party does not offer it).

Against this overwhelming evidence, Defendants have little to say. They point to a few, isolated instances where others have used, or misused, the term Kefir in a broader sense of a fermented drink, but these do not change the fact that ordinary, reasonable consumers, and certainly the ones who use dictionaries, view it as a dairy drink.

### D.     Plaintiff's Claims Are Not Barred by Limitations Or Laches

Defendants Millennium and CocoKefir, LLC, a **Delaware** limited liability company ("CocoKefir (Delaware)"), do not have standing to assert statute of limitations and laches, because their involvement with this product began just six months ago, on March 1, 2016, when Millennium claims it acquired the product line. (Larsen Decl., ¶ 1.) In fact, CocoKefir (Delaware) was not even formed until February 12, 2016. (Shackelford Decl., Ex. 1.). Plainly, a three-year statute of limitations cannot have run as against a Delaware company that was just created in 2016, or as against a company that did not own or sell the product until 2016.

Defendants misrepresent to the Court that CocoKefir, LLC "is still the entity responsible for making and distributing CocoKefir products." (Larsen Decl., ¶ 9, Dkt 17-1.) But that company was CocoKefir, LLC, a **Minnesota** company ("CocoKefir (Minnesota"), which the Larsens created in 2009, that continues to exist as a separate corporate entity, and that is not a Defendant in this case.[5] (Reply Shackelford Decl., Ex. 2.) Defendants deliberately compound this misrepresentation by omitting the state of incorporation in all of their captions, in Larsen's Declaration, in the Statement of Interested Parties and even in the Corporate Disclosure Statement, where one would expect some precision in describing the companies at issue. (Dkt. 17, 19, 20.) In other words, by conflating the two separate CocoKefir companies, Defendants hope to fool the Court into thinking that it is all just one company whose rights date back to 2009.

Contrary to Larsen's rosy picture of CocoKefir (Minnesota), it appears that it was in fact was well on its way out of business. In January of 2016, it reported that its server was down and unable to process transactions. (Larsen Decl., Dkt 17-3, Ex. L, pp. 52-53,). And in April 2016, they reported that their "production and distribution is temporarily shut down," and that they were "moving our manufacturing facility out of Minnesota." (*Id.*) Even their phone stopped working. (Reply Miller Decl., ¶ 14.)

---

[5] This company also appeared to do business as "Tula's CocoKefir."

Eventually, the company admitted on its website that none of its products were available in stores. (*Id.*, Ex. 2 (Website Comments).) On March 7, 2016, the company even changed its name to "TnT Fermented Foods, LLC." As one commentator put it, responding to a video about the company posted on YouTube in 2013: "**are you guys out of business?**" (Reply Shackelford Decl., Ex. 4 (YouTube Video Comment; (emphasis added).)

The distinction between CocoKefir (Minnesota) on the one hand, and CocoKefir (Delaware) and its parent company, Millennium, on the other hand, is critical to this application for injunctive relief, because Millennium has a much larger distribution profile than CocoKefir (Minnesota) ever did, and is threatening to expand distribution into supermarket chains where Lifeway currently does business. Exhibit O, an undated listing of the Minnesota company's alleged sales, shows that such sales were largely concentrated in small shops in Minnesota, with just nine sales locations in all of California. (Larson Decl., Dkt. 17-4, Ex. O.) In contrast, Millennium's website proudly proclaims that it sells its products to large scale supermarket chains like Ralph's and Pavilions, stores through which Lifeway also sells its own products. (Reply Miller Decl., ¶¶ 8-9, Ex. 1.) That is why Lifeway sought an injunction against Millennium and CocoKefir (Delaware), but did not need to do so against CocoKefir (Minnesota), which it reasonably believed (i) was selling locally and through a barely functional website; (ii) posed little competitive threat; and (iii) was already going out of business.

Moreover, even if these two new Defendants had standing, the statute of limitations would not help them against a claim for injunctive relief on continuous accrual of new violations. On this application, the only issue before the Court is injunctive relief, not damages,[6] and injunctive relief is readily available for continuously

---

[6] The statute of limitations does not bar all damages; instead, it merely establishes the outside limit. For Lanham Act claims, that would be at least three (3) years, to 2013. The analogous limitation for a Lanham Act of false advertisement is three years. *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.,* 285 F.3d 848, 857 (9th Cir. 2002).

accruing claims under both the UCL and the Lanham Act. In *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013), the California Supreme Court held that "continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.'" (citing *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 110 Cal.App.4th 1288, 1295 (2003)). Continuous accrual supports recovery for damages arising from those breaches falling within the limitation period. *Id.* As the *Aryeh* court noted, although unfair business practices charges were not before them, if unfair practices are in fact actionable, each unfair act would create a new attendant limitations period. *Id.*[7] Where a federal court imports a state statute of limitations, it also imports related doctrines, such as accrual. See generally, *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 464 (1975), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 ("the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim").

For the same reasons, laches does not apply here. Laches is generally "personal" to the party asserting it. *See, Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984) ("[L]aches or acquiescence is a personal defense which merely results in a loss of rights as against one defendant." (citing 2 J.T. McCarthy, Trademarks and Unfair Competition 31:15 at 587 (2d ed.1984)). Here, Millennium and CocoKefir (Delaware) would have to be pretty flexible indeed to assert laches based on

---

[7] *Yumul v. Smart Balance*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010), does not help Defendants here. That was a pure fraud case, where the plaintiff alleged defendant had fraudulently concealed the inclusion of artificial trans-fat in margarine, but pleaded no facts to explain why she did not discover that over a 10 year period. Here, the case is built around the recent use of a deceptive label by two Defendants who did not acquire the product line until 2016.

conduct that preceded their acquisition of the product by up to six years, when they just acquired the product this year.

Moreover, in *Jarrow*, cited by Defendants, the court explained that in determining whether delay was unreasonable, "[w]e consider whether the plaintiff has proffered a legitimate excuse for its delay." *Jarrow Formulas*, 304 F.3d at 838 (9th Cir. 2002) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001). Legitimate excuses include: when delay is due to exhausting remedies through the administrative process, evaluating and preparing a complicated claim or when its purpose is "to determine whether the scope of the proposed infringement will justify the cost of litigation." *Danjaq*, 263 F.3d at 954. Here, in 2012-2015, it was not possible to justify the extensive costs of a federal court action for a company that did not have nationwide distribution, that sold products (if at all) primarily in Minnesota or through its non-functioning website, and that appeared to be going out of business. All of that changed in 2016, when Millennium acquired the product and decided to "re-launch" it into direct competition with Lifeway. Lifeway had a very good reason to wait until 2016 to bring this action, and Defendants, who had no connection with this product until 2016, have no basis to assert laches or the statute of limitations.

Equitable estoppel does not apply either. Defendants could not have "relied" upon some alleged non-activity in 2013, considering that they first acquired the product in 2016. Defendants' assertion that they "**may** not have purchased CocoKefir and the CocoKefir brand had Lifeway timely filed suit" is self-evident speculation. (Opp. at 12.) Curiously, Defendants submitted a lengthy declaration from Mr. Larsen, who was the **seller** of the brand and therefore, according to Defendant's speculative logic, would have benefited from the lack of a lawsuit. But his declaration says nothing about this point. And, tellingly, there is no declaration from any other employee or officer of Millennium or CocoKefir (Delaware) stating definitively that they would not have purchased the brand or would have paid less for it. See *Seller Agency Council, Inc. v. Kennedy Ctr. for*

*Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010) ("[U]ndue prejudice requires at least some reliance on the absence of a lawsuit.")

### E. Defendants' Defenses Are Barred By Unclean Hands

Defendants' defenses are themselves barred by unclean hands. The doctrine of unclean hands applies to all legal and equitable claims and defenses. The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945). Specifically, "A party with unclean hands may not assert laches." *Jarrow Formulas*, 304 F.3d at 841-42 (9th Cir. 2002) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 825 (7th Cir. 1999); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209-10 (9th Cir. 2000) (applying unclean hands doctrine to Lanham Act trademark infringement action).

In this case, the equitable defenses of estoppel and laches are not available to Defendants because they do not have clean hands. The label on their product is deceptive on its face, because it calls the product Kefir but its ingredient label admits there is no Kefir in it. Moreover, as noted in the moving papers and not refuted in the opposition, Defendants have deliberately misrepresented their product to the USPTO as a dietary supplement, not a beverage, while simultaneously representing to the FDA and the consuming public that it is a beverage, and trading on common understanding that it is a dairy product. And, on this application itself, Defendants have compounded their misconduct by give the misleading impression that CocoKefir (Minnesota) is the same company as CocoKefir (Delaware). Defendant's inequitable conduct goes to the heart of the matter in this case: namely, what is Kefir and what is CocoKefir, whether Defendants' label is truthful or misleading to consumers, to the USPTO, and to the FDA.

### F. Lifeway Will Suffer Irreparable Injury

Plaintiff Lifeway will suffer irreparable injury if an injunction does not issue. Lifeway has spent 30 years and more than $86 million to develop its market, brand and goodwill for Kefir. (Reply Miller Decl., ¶ 4; Reply Shackelford Decl., Ex. 5.) Lifeway

distributes its products in chain supermarkets such as Ralph's and Pavilions. (Reply Miller Decl., ¶ 7.) Defendant Millennium currently sells its "Kombucha" and similar products in these same stores. (*Id*., ¶¶ 8-9) And, by its own admission, Millennium has recently "repackaged" the "CocoKefir" products to look just like its "Kombucha" products in these stores.

Plaintiff will undoubtedly lose goodwill and suffer dilution of its brand identity when "CocoKefir" is marketed in Ralph's and Pavilions, particularly if it is placed in the dairy section, as CocoKefir (Minnesota) has done in the past. (*Id*. ¶ 11.) It is extremely hard to quantify the loss of goodwill that would result from this damage to Lifeway's goodwill, and that is precisely why injunctive relief, rather than damages, is the key relief sought in this case. In this Circuit, intangible injuries, such as **damage to goodwill, can constitute irreparable harm**, as the case cited by Defendants confirms. *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

Defendants purport to rely on *Herb Reed*, but that case stands for the simple proposition that evidence of loss of goodwill is not presumed from trademark infringement, and numerous cases before *Herb Reed* which have held that **evidence** of likely loss of goodwill can constitute irreparable harm. S*ee, e.g.*, *eBay, Inc. v. Bidder's Edge, Inc.,* 100 F.Supp.2d 1058, 1066 (N.D.Cal.2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief."). More importantly, later cases which have cited *Herb Reed* have reached the same conclusion, and relied on pre-*Herb Reed* cases with respect to evidence of threatned injury to goodwill. *Adidas Am., Inc. v. Skechers USA, Inc.* (D. Or. 2016) 149 F.Supp.3d 1222, 1249 ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.") (citing *Herb Reed* and quoting *Rent–A–Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991)).

Here, there is compelling **evidence** of likely and irreparable damage to Lifeway's goodwill:

- Lifeway spent 30 years and more than $86 million developing its goodwill. (Reply Miller Decl., ¶¶ 3-4.)
- Consumer blog posts show that consumers think CocoKefir is actually Kefir. (Original Miller Decl., Dkt. 6-2, Ex. 3.)
- The consumer survey confirms that a substantial percentage believe it is I dairy Kefir. (Supp. Shackelford Decl., Dkt.12-3, Ex. 6.)
- CocoKefir has been sold in the dairy section. (Larsen Decl., Dkt. 17-3, Ex. L, p. 57.)
- Millennium recently purchased the brand and sells to the same chain supermarkets as does Lifeway. (Larsen Decl., Dkt. 17-1, ¶ 1.)
- Millennium recently re-designed the CocoKefir label to conform to the style of the products it sells in these supermarket chains. (Larsen Decl., Dkt 17-1, ¶ 9.)

This unrefuted evidence demonstrates that loss of goodwill is not just likely but inevitable if an injunction does not issue.

### G. The Balance Of Equities Tips Sharply In Favor of Lifeway

Conversely, Defendants will lose little or nothing if they use a different name at the outset of their marketing to Ralph's, Pavilions and similar locations. Defendants claim that they have spent seven years developing their brand, but this is not actually true. CocoKefir (Minnesota) never used Millennium's brand or label style before the March 2016 acquisition. And the two Defendants actually before the Court, Millennium and CocoKefir (Delaware) had no connection with the product whatsoever until a few months ago, when they acquired the rights and started to re-launch the product.

### H. All Of Defendants' Issues Can Be Resolved By An Appropriate Bond

Any concerns that Defendants may have had could and should have been addressed by them in the context of setting the appropriate amount for a bond. Fed. R.

Civ. P. 65(c). Defendants say they will be harmed, but they refuse to say how or by how much. It was up to Defendants to establish what profits would be lost if the injunction were granted. See *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills* 321 F.3d 878, 883 (9th Cir. 2003) ("We do not, however, believe that the language of Rule 65(c) absolves the party affected by the injunction from its obligation of presenting evidence that a bond is needed"; upholding district court's exercise of discretion in dispensing with bond where defendant "**failed to request a bond or submit any evidence regarding her likely damages**"; emphasis added). Here, the lack of any evidence from Defendants about the nature of the alleged harm from the issuance of an injunction supports a strong inference that there will be no such harm.

### III. CONCLUSION

In the long run, an injunction will help both Plaintiffs and Defendants. It will encourage Defendants to develop a label that is not deceptive, and it will cap any recoverable damages as of the issuance of the injunction. Lifeway respectfully urges this Court to issue a narrowly tailored injunction, that does not prevent Defendants from selling coconut water with probiotics, but simply precludes them from using the term "Kefir" to describe such products.

Dated: October 24, 2016          GREENBERG TRAURIG, LLP


By:   */s/ Rick. L. Shackelford*
      Rick L. Shackelford
      Daniell K. Newman
      Adam Siegler
      Attorneys for Plaintiff
      Lifeway Foods, Inc.

*TCO 362208276v16*