NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFEWAY FOODS, INC., ) | CASE NO. CV 16-7099-R |
| ) | |
| Plaintiff, ) | ORDER DENYING PLAINTIFF'S |
| ) | MOTION FOR PRELIMINARY |
| v. ) | INJUNCTION |
| ) | |
| MILLENIUM PRODUCTS, INC., d/b/a ) | |
| GT'S KOMBUCHA / SYNERGY DRINKS; ) | |
| and COCOKEFIR LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Before the Court is Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 12) which was filed on October 10, 2016. Having been thoroughly briefed by both parties, this Court took the matter under submission on November 3, 2016.

Plaintiff, Lifeway Foods, Inc. ("Lifeway"), is a manufacturer of kefir products. Defendant Millennium Products, Inc. ("Millennium") is a self-described "probiotic beverage company," which acquired CocoKefir in March 2016. CocoKefir was a business producing a non-dairy beverage that it called kefir made with coconut water. Kefir is a slightly fermented beverage that, though it has been produced for over one hundred years, has recently grown in popularity as a healthy drink. Typically, kefir is a dairy-based beverage.

Lifeway claims that kefir is, by definition, a dairy-based drink. Lifeway argues that

because CocoKefir does not contain any dairy, it cannot be kefir and is therefore falsely advertised and misleading. Lifeway first expressed these views to CocoKefir in 2010 in the form of a cease-and-desist letter. In 2012, Lifeway sent a second cease-and-desist letter, and it sent a final letter one week prior to the filing of this action. Indeed, the Food and Drug Administration ("FDA") was also concerned with CocoKefir's product and labeling. In 2011, the FDA sent Defendant a warning letter stating that it believed the CocoKefir name may mislead customers because it could imply that the product was a dairy-based beverage. However, after CocoKefir's response to the warning letter, the FDA issued a close out letter stating that CocoKefir had addressed its concerns.

Plaintiff now alleges three causes of action against Defendant: (1) violation of the Lanham Act by false advertising and unfair competition, (2) unfair competition under Cal. Bus. & Prof. Code §17200, and (3) false advertising under Cal. Bus. & Prof. Code §17500.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party is entitled to injunctive relief upon a showing that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in the moving party's favor, and (4) an injunction is in the public interest. *Id.* at 20. This Court finds that Plaintiff has not made the requisite showing to justify the "extraordinary remedy" that is a preliminary injunction.

First, the Court must determine the likelihood that Lifeway will succeed on the merits. In order to prevail on a claim under the Lanham Act or its state law claims, Plaintiff must ultimately prove: (1) Defendants made a false or misleading statement, (2) the statement actually deceived or has a likelihood of deceiving a substantial segment of consumers, (3) the alleged deception is material, (4) Defendants caused the statement to enter interstate commerce, and (5) Lifeway has been or is likely to be injured as a result of Defendants' statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiff's claims are largely based on its assertion that kefir must contain dairy in order to be called kefir. If kefir must be a dairy-based beverage, then Defendant's product could be misleading because it does not contain dairy. Plaintiff cites a wide range of dictionary definitions

and websites supporting its argument that kefir must contain dairy. However, these sources are minimally convincing. As mentioned above, kefir only recently rose to popularity. As Plaintiff's concerns of irreparable harm indicate, the market for kefir is relatively small and not yet fully developed. Thus, these websites' and dictionary's definitions do not provide a convincing definition of kefir, but rather, a surface-level understanding of a relatively new product. These definitions are not ones on which the FDA or any regulatory body has chosen to rely.

On the contrary, the FDA has reviewed the core of Plaintiff's claim and found it to be unworthy of regulatory action. The 2011 warning letter from the FDA to CocoKefir stated in relevant part that the FDA was concerned the name CocoKefir would mislead consumers to believe it was a dairy-based beverage. However, after CocoKefir's response, the FDA was satisfied that CocoKefir was neither misleading nor mislabeled.

Furthermore, Plaintiff's attempts to define kefir as a necessarily dairy-based beverage based on the word kefir's inclusion in various FDA regulations is unconvincing. Plaintiff points out that "kefir cultured milk" is listed as an example of "cultured milk" in 21 C.F.R. §113.112(f). The mere inclusion of the word kefir in the regulation defining cultured milks is not proof that kefir must be a dairy-based beverage. It proves nothing more than the fact that there may be kefirs which are a type of cultured milk. Defendant points out that "soy milk" products are not mislabeled by virtue of calling itself milk despite its lack of dairy. Plaintiff responds by arguing, simultaneously, that kefir has a more historical and specific definition as a dairy-based drink than soy milk while also arguing that it has spent "millions" of dollars branding its kefir as a dairy-based drink. If the meaning of kefir was so clear and "enshrined," it would seem unnecessary to spend millions of dollars specifically branding kefir as a dairy-based beverage.

Even if kefir was by definition a dairy-based drink and therefore CocoKefir was a misleading statement, Plaintiff has not shown that a substantial segment of consumers are likely to be misled by the CocoKefir product. Plaintiff's reliance on a survey emailed by its counsel is wholly unconvincing. The questions were not designed by an expert, the results were not interpreted by a statistician, and the sample was never disclosed. Without the survey results, Plaintiff is left to rely on social media comments. These comments are even less convincing than

3

the survey.

Given that Plaintiff has not made a sufficient showing of a misstatement by the Defendant or a likelihood of confusion by a substantial segment of the consumer population, it has not shown a likelihood of success on the merits.

Next, the Court must assess the possibility of irreparable injury to Plaintiff in the absence of injunctive relief.  Irreparable injury must be more than merely speculative in order to warrant a preliminary injunction.  *Herb Reed Enters., LLC v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).  Here, Plaintiff argues that because the market for kefir is relatively new and small, CocoKefir will cause Lifeway to lose sales by deceiving consumers to buy its product rather than Lifeway's.  Plaintiff offers no support for its contentions.  CocoKefir is advertised as a vegan beverage, while Lifeway Kefir is a dairy product.  The products do not have similar appearances.  This type of speculative evidence offered by Plaintiff regarding a possible loss of market share is insufficient to establish irreparable injury under *Herb Reed*.

Finally, Plaintiff has not shown that the balance of equities tips in its favor, nor has it shown that a preliminary injunction is in the public interest.  Forcing Defendant to remove its product from the market would be a serious harm.  On the other hand, Plaintiff has competed with CocoKefir for seven years.  Requiring Plaintiff to continue to compete with CocoKefir for the duration of these proceedings will be less of a hardship than removing Defendant's product from the market completely.  Furthermore, there is no evidence that an injunction would serve the public interest given the Court's findings above that the Plaintiff has failed to show a likelihood of confusion amongst a substantial portion of consumers.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction is DENIED.

Dated: November 17, 2016.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE