BRIAN M. BERLINER (S.B. #156732)
bberliner@omm.com
JORDAN RAPHAEL (S.B. #252344)
jraphael@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

TIM BYRON (S.B. #277569)
tbyron@omm.com
JESSE J. KOEHLER (S.B. #300530)
jkoehler@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants
MILLENNIUM PRODUCTS, INC. and
COCOKEFIR LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFEWAY FOODS, INC.,<br><br>                  Plaintiff,<br><br>       v.<br><br>MILLENNIUM PRODUCTS, INC.,<br>d/b/a GT'S KOMBUCHA /<br>SYNERGY DRINKS; and<br>COCOKEFIR LLC,<br><br>                  Defendants. | Case No. 2:16-cv-07099-R-JEM<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Manuel L. Real<br><br>Hearing Date: February 6, 2017<br><br>Complaint Filed: September 21, 2016<br><br>Trial Date: Not Set |

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, February 6, 2017 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Manuel L. Real in Courtroom 8 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Millennium Products, Inc. ("Millennium") and CocoKefir LLC ("CocoKefir") (collectively, "Defendants") will and hereby do move the Court for an award of attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2).  This Motion is made on two independent grounds:  (1) this is an exceptional case under the Lanham Act, 15 U.S.C. § 1117(a), and (2) fees are also under proper under 28 U.S.C. § 1927, because, *inter alia*, Plaintiff Lifeway Foods Inc. ("Lifeway") and its counsel filed this case with no good-faith basis for or adequate pre-filing investigation of the claims, and unnecessarily multiplied the proceedings.  Defendants respectfully request an award in the amount of $215,979.75 for attorneys' fees and related nontaxable expenses incurred in (1) their successful defense against Lifeway's motions for a temporary restraining order and preliminary injunction (ECF No. 32), and (2) their motion to dismiss all of Lifeway's claims, which this Court granted on December 14, 2016 (ECF No. 41).  Defendants also request an award of their fees and costs incurred in bringing this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 19, 2016.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities and accompanying declaration and exhibits, the pleadings and papers on file in this action, and any further evidence or argument presented at or before the hearing on this motion.

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1

2

Dated:  December 28, 2016

Respectfully submitted,

3

O'MELVENY & MYERS LLP

4

5

By:  _/s/ Brian M. Berliner_
Brian M. Berliner

6

7

8

9

10

11

Brian M. Berliner (S.B. #156732)
bberliner@omm.com
Jordan Raphael (S.B. #252344)
jraphael@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

12

13

14

15

16

Tim Byron (S.B. #277569)
tbyron@omm.com
Jesse J. Koehler (S.B. #300530)
jkoehler@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

17

18

Attorneys for Defendants
MILLENNIUM PRODUCTS, INC. and
COCOKEFIR LLC

19

20

21

22

23

24

25

26

27

28

2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  BACKGROUND ...................................................................................... 1

     A.  The Parties ...................................................................................... 1

     B.  The Lawsuit and Plaintiff's Failed Attempts to Obtain a TRO and Preliminary Injunction ................................................................ 3

     C.  Defendants' Successful Motion to Dismiss Lifeway's Claims ........... 5

III. ARGUMENT ........................................................................................... 7

     A.  Defendants Are Entitled to Fees Under the Lanham Act .................... 7

     B.  Defendants Are Entitled to Fees Under 28 U.S.C. § 1927 ................ 12

     C.  Defendants' Fee Request Is Reasonable ........................................... 13

         1.  The hourly rates for Defendants' timekeepers are reasonable ............................................................................... 14

         2.  The number of hours billed by Defendants' attorneys were reasonably expended in this case ................................... 16

             a.  Motion for Preliminary Injunction ................................. 16

             b.  Motion to Dismiss ........................................................... 17

         3.  The lodestar is reasonable and no adjustment is warranted ..... 17

IV.  CONCLUSION ...................................................................................... 19

1

**TABLE OF AUTHORITIES**

Page

2

**CASES**

3

*Anhing Corp. v. Viet Phu, Inc.*,
    No. 14-56664, 2016 WL 6561499 (9th Cir. Nov. 4, 2016)..................................8

4

5

*B.K.B. v. Maui Police Dep't*,
    276 F.3d 1091 (9th Cir. 2002) ..........................................................................12

6

*Blackwell v. Foley*,
    724 F. Supp. 2d 1068 (N.D. Cal. 2010)............................................................19

7

8

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..........................................................................................14

9

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ............................................................................14

10

*Chalmers v. City of L.A.*,
    796 F.2d 1205 (9th Cir. 1985) ..........................................................................14

11

12

*Design Res., Inc. v. Leather Indus. of Am.*,
    No. 1:10CV157, 2016 WL 5477611 (M.D.N.C. Sept. 29, 2016) ......................11

13

14

*Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*,
    No. CV 14-01918 JVS (JCGx), 2015 U.S. Dist. LEXIS 178443
    (C.D. Cal. Apr. 1, 2015)..................................................................................9, 10

15

16

*Enovsys LLC v. AT&T Mobility LLC*,
    No. CV 11-5210 SS, 2016 WL 3460794 (C.D. Cal. Feb. 16, 2016).........8, 10, 11

17

*In re SNTL Corp.*,
    571 F.3d 826 (9th Cir. 2009) ............................................................................13

18

19

*Intel Corp. v. Terabyte Int'l, Inc.*,
    6 F.3d 614 (9th Cir. 1993) ..................................................................13, 16, 17

20

*Jordan v. Multnomah Cnty.*,
    815 F.2d 1258 (9th Cir.1987) ...........................................................................13

21

22

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976)............13, 15, 18

23

24

*Ketab Corp. v. Mesriani Law Grp.*,
    No. CV 14-7241-RSWL-MRWX, 2016 WL 4425714
    (C.D. Cal. Aug. 17, 2016) .................................................................................12

25

26

*Love v. Mail on Sunday*,
    No. CV 05-7798 ABC (PJWx), 2007 WL 2709975
    (C.D. Cal. Sept. 7, 2007) ..................................................................................15

27

28

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    No. C13-1932RSM, 2015 WL 5156330
    (W.D. Wash. Sept. 2, 2015)............................................................................9, 11

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) ................................................................13

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......................................................16, 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ...................................................................7, 8

*Parrott v. Corley*,
No. 05-74552, 2006 WL 2471943 (E.D. Mich. Aug. 24, 2006),
*aff'd*, 266 F. App'x 412 (6th Cir. 2008) ...............................................12

*Pom Wonderful LLC v. Purely Juice, Inc.*,
No. CV 07-2633 CAS (JWJx), 2008 WL 4351842
(C.D. Cal. Sept. 22, 2008) ................................................................15

*ROAR, LLC v. ROAR Global Ltd.*,
No. 215CV05865ODWAFM, 2016 WL 7115902
(C.D. Cal. Dec. 5, 2016) .....................................................................8

*Schwartz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ...............................................................14

*Stonebrae v. Toll Bros.*,
No. C-08-0221 EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ................19

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) ...........................................................7, 8

*Teller v. Dogge*,
112 U.S.P.Q.2D (BNA) 1513 (D. Nev. 2014) ........................................15

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
No. CV 12-1285-RGA, 2015 WL 9462063 (D. Del. Dec. 28, 2015) ................9

*Widrig v. Apfel*,
140 F.3d 1207 (9th Cir. 1998) ............................................................14

*Yufa v. TSI Inc.*,
No. 09–cv–01315–KAW, 2014 WL 4071902
(N.D. Cal. Aug. 14, 2014) .............................................................10, 11

**STATUTES**

15 U.S.C. § 1117(a) ............................................................................1, 7

28 U.S.C. § 1927 .................................................................................1, 12

Cal. Bus. & Prof. Code § 17200 ................................................................3

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Cal. Bus. & Prof. Code § 17500 ................................................................... 3

4

**RULES**

5

Fed. R. Civ. P. 6(a)(1)(C) & (a)(5) ............................................................. 4

6

L.R. 6 ............................................................................................................. 4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

1  ## MEMORANDUM OF POINTS AND AUTHORITIES

2  ## I.   INTRODUCTION

3      Defendants respectfully move for attorneys' fees and costs pursuant to 15

4  U.S.C. § 1117(a) and 28 U.S.C. § 1927.  Lifeway brought this action in an attempt

5  to shut down a competing brand—CocoKefir—after seven years of sales,

6  promotion, and investment by Defendants, and despite its admitted knowledge of

7  the brand since 2011.  ECF No. 41 at 2-3, 5.

8      At each stage of the litigation—*i.e.*, temporary restraining order, preliminary

9  injunction, and motion to dismiss—the Court found Lifeway's arguments to be

10 meritless.  In its Order granting Defendant's motion to dismiss, the Court held that

11 Lifeway's claims were barred by laches and applicable state statutes of limitations,

12 and that Lifeway had "offer[ed] no justification for its delay in filing this case."

13 ECF No. 41 at 4.  And in denying Lifeway's motion for preliminary injunction, the

14 Court held that Lifeway had failed to satisfy any of the factors necessary to justify

15 the relief requested—and specifically rejected its central claim that "a substantial

16 segment of consumers are likely to be misled by the CocoKefir product."  ECF No.

17 32 at 3.  As set forth more fully below, Lifeway's attempt to assert claims against

18 Defendants that were both untimely and implausible—and which would readily

19 have been shown to be groundless with an adequate pre-filing investigation—

20 renders this case exceptional.  Indeed, the only reason this case appears to have

21 been brought was for the improper purpose of intimidating and harassing a

22 competitor.  Accordingly, Defendants' motion to recover the fees that they incurred

23 in defending themselves in this meritless lawsuit should be granted.

24 ## II.   BACKGROUND

25 ### A.   The Parties

26     This now-dismissed case concerned "kefir"—a "starter of yeast and lactic

27 acid bacteria" that is used to ferment liquids.  ECF No. 1 ¶¶ 7, 16.  Defendants

28 make and sell nondairy, vegan, coconut-based kefir drinks under the brand

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1   CocoKefir.  *Id*. ¶¶ 1, 20-21; ECF No. 32 at 4.  CocoKefir branded drinks have been

2   sold and marketed continuously since 2009.  ECF No. 17-6 at 2, 35-36; ECF No. 29

3   at 3; ECF No. 41 at 5.  Plaintiff Lifeway is a producer of dairy-based cultured milk

4   products, which it markets using the term "kefir."  ECF No. 1 ¶¶ 2, 14; ECF No. 32

5   at 1.

6           Lifeway first expressed its concerns about the CocoKefir brand in a June 3,

7   2010 cease-and-desist letter.  ECF No. 17-1 ¶ 10; ECF No. 17-4, Ex. Q.  Lifeway

8   contended that the term "kefir" could only be used on dairy products and that

9   CocoKefir's use of the word "kefir" on a nondairy product constituted false

10  advertising.  ECF No. 17-4, Ex. Q.  CocoKefir promptly responded to Lifeway's

11  letter on June 7, 2010, stating that Lifeway's claims were "baseless" and that, as a

12  result, CocoKefir would not cease and desist using "kefir" on its labeling and in its

13  communication materials.  ECF No. 17-1 ¶ 11; ECF No. 17-5, Ex. R.

14          As this Court held, the statute of limitations on Lifeway's potential claims

15  concerning the CocoKefir brand began to accrue in 2011 when Lifeway admitted it

16  not only knew of CocoKefir but also realized "that the product it sold 'contained no

17  milk' and 'posed a competitive threat.'"  ECF No. 41 at 3; ECF No. 6-2 ¶ 3.

18          After Lifeway's admitted awareness of the CocoKefir brand in 2011, the

19  parties had only one more interaction until just prior to the September 21, 2016

20  filing of this lawsuit.  On October 2, 2012, Lifeway again wrote to CocoKefir.  ECF

21  No. 17-1 ¶¶ 12-13; ECF No. 17-5, Ex. S.  This letter mirrored Lifeway's June 3,

22  2010 letter nearly word-for-word and ignored CocoKefir's June 7, 2010 response.

23  ECF No. 17-5, Ex. S.  It concluded with the same cease-and-desist demand and

24  threat "to take any and all such action as necessary" if CocoKefir did not comply.

25  *Id.*  CocoKefir promptly responded, noting the duplicative nature of Lifeway's

26  letter and again responded that Lifeway's claims were baseless and that CocoKefir

27  would not cease and desist using the term "kefir."  ECF No. 17-5, Ex. T.

28

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

**B.     The Lawsuit and Plaintiff's Failed Attempts to Obtain a TRO and Preliminary Injunction**

In March 2016, Defendant Millennium, another probiotic beverage company, acquired CocoKefir and all of its goodwill.  ECF No. 17-1 ¶¶ 1, 9; ECF No. 32 at 1.  Neither Defendant heard from Lifeway after its 2012 letter until September 14, 2016, when they received another demand letter from Lifeway that was nearly identical to Lifeway's 2010 and 2012 letters.  ECF No. 17-1 ¶ 28, Ex. GG.  Lifeway demanded a response from Defendants by September 23, 2016.  *Id.*

On September 21, 2016—two days ***before*** Lifeway's requested response deadline—Lifeway filed this lawsuit and an *ex parte* application for a temporary restraining order.  In its Complaint, Lifeway brought three claims:  (1) false advertising and unfair competition under the Lanham Act; (2) unfair competition under Cal. Bus. & Prof. Code § 17200; and (3) false advertising under Cal. Bus. & Prof. Code § 17500.  ECF No. 1 ¶¶ 45-75.  Lifeway premised these claims on its allegation that "kefir" products must include dairy milk, and therefore CocoKefir, a dairy-free product, is falsely advertised.  In its *ex parte* application, Lifeway alleged that Defendants planned to "launch" CocoKefir and "aggressively advertise" it at 2016 Expo East, a trade show held from September 22-24, 2016.  ECF No. 6 at 21.  Contrary to Lifeway's allegations, Defendants never intended to promote CocoKefir or any other product at Expo East—a fact that was easily ascertainable to Lifeway from the exhibitor list on Expo East's website, which lists neither Millennium nor CocoKefir.  ECF No. 17-1 ¶ 30, Ex. II.  Lifeway never mentioned any of the parties' 2010 and 2012 correspondence in its Complaint or in its *ex parte* application.

On September 23, 2016, the Court denied Lifeway's *ex parte* application on the ground that Lifeway had failed to establish the requirement of irreparable harm.  ECF No. 9 at 2.  The Court stated that it was "not convinced that allowing

1    Defendant to launch the product at the Expo East Natural Foods trade show will

2    irreparably harm Plaintiff." *Id*.

3          On October 10, 2016, Lifeway filed an untimely supplemental motion[1] for

4    preliminary injunction, and attached a "survey emailed by its counsel" in which

5    "[t]he questions were not designed by an expert, the results were not interpreted by

6    a statistician, and the sample was never disclosed." ECF No. 32 at 3; ECF No. 12-1

7    at 15.

8          On October 17, 2016, Defendants filed their opposition to Lifeway's

9    amended motion for preliminary injunction. ECF No. 17. In it, Defendants argued

10   that all of Lifeway's claims were time-barred and that its allegations regarding use

11   of the term "kefir" and its untimely health claims fail as a matter of law. *Id*. On

12   October 24, 2016, Lifeway filed a reply in support of its motion, which included

13   new arguments and evidence, including an incomplete portion of a YouTube page

14   that conspicuously omitted images of videos wherein consumers use "kefir" to refer

15   to nondairy drinks, in direct contradiction to Lifeway's claims. ECF Nos. 26, 27.

16   Defendants filed objections to this untimely and improper material. ECF No. 27.

17         On November 17, 2016, the Court denied Lifeway's preliminary injunction

18   motion, finding that Lifeway had "not made the requisite showing to justify the

19   'extraordinary remedy' that is a preliminary injunction." ECF No. 32 at 2.

20   Specifically, the Court found that Lifeway had failed to show that any of the four

21   factors courts consider in evaluating injunctive relief favored a preliminary

22   injunction. *Id*. at 2-4. As to likelihood of success on the merits, the Court noted

23   that Lifeway's claims were "largely based on its assertion that kefir must contain

24   dairy in order to be called kefir." *Id*. at 2. However, the Court found Lifeway's

25   ───────────────

26   [1] Lifeway's deadline to file such a motion was October 7, 2016. Under L.R. 6, supplemental motions are due 28 days before the hearing date. Because October 10, 2016 was a federal holiday—Columbus Day—Lifeway's supplemental

27   brief was due on October 7—the first day before October 10 that is not a Saturday, Sunday, or holiday. *See* Fed. R. Civ. P. 6(a)(1)(C) & (a)(5). Because Lifeway's

28   motion was filed on October 11, 2016, it was untimely.

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1    evidence in support of this assertion to be "minimally convincing." *Id*. at 3.  It

2    noted that contrary to Lifeway's argument, "the FDA has reviewed the core of

3    Plaintiff's claim and found it to be unworthy of regulatory action." *Id*.  The Court

4    also noted that Lifeway's "attempts to define kefir as a necessarily dairy-based

5    beverage based on the word kefir's inclusion in various FDA regulations" were

6    "unconvincing," because "[t]he mere inclusion of the word kefir in the regulation

7    defining cultured milks is not proof that kefir must be a dairy-based beverage." *Id*.

8    The Court also held that "[e]ven if kefir was by definition a dairy-based drink and

9    therefore CocoKefir was a misleading statement, Plaintiff has not shown that a

10   substantial segment of consumers are likely to be misled by the CocoKefir

11   product." *Id*.  Finally, the Court rejected Lifeway's attorney-conducted survey as

12   "wholly unconvincing," and deemed Lifeway's reliance on "social media

13   comments" to be "even less convincing." *Id*. at 3-4.

14        With respect to the irreparable harm factor, the Court concluded that Lifeway

15   had put forward only "speculative evidence" that was "insufficient to establish

16   irreparable injury" under Ninth Circuit precedent.  *Id*. at 4.  As to the final two

17   factors—balance of equities and public interest—the Court found that because

18   CocoKefir had sold its products for seven years, "[f]orcing Defendant to remove its

19   product from the market would be a serious harm," and there was "no evidence that

20   an injunction would serve the public interest" since Lifeway had failed to show any

21   likelihood of confusion.  *Id*.

22        **C.    Defendants' Successful Motion to Dismiss Lifeway's Claims**

23        While Lifeway's motion for preliminary injunction was pending, Defendants

24   also moved to dismiss this action on October 28, 2016 on the grounds that

25   Lifeway's claims were time-barred and that Lifeway had not plausibly alleged that

26   Defendants' use of "CocoKefir" was false or misleading.  ECF No. 28.  In its

27   opposition to Defendants' motion to dismiss, Lifeway relied primarily on its

28   unsupported—and demonstrably untrue—allegation that its delay in filing suit was

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

justified because CocoKefir purportedly "disappeared from the market" in or around 2011.  ECF No. 31 at 11; ECF No. 41 at 3.

On December 14, 2016, the Court granted Defendants' motion to dismiss and closed this case.  ECF No. 41.  Based on Lifeway's admitted awareness of "CocoKefir and its allegedly infringing conduct in 2011" and unreasonable and unjustified delay in filing suit, the Court held that Lifeway's state law claims were barred by their respective statutes of limitations and Lifeway's Lanham Act claim was barred by laches.  *Id.*  The Court's Order also addressed Lifeway's attempt to justify its delay in bringing suit by relying on its allegation "in the Complaint that CocoKefir withdrew from the market 'not long after'" CocoKefir received a warning letter from the FDA in November 2011.  *Id.* at 3.  The Court stated that this allegation was "directly contradicted by evidence subject to judicial notice," specifically:

- a June 3, 2013 letter that the FDA sent to CocoKefir stating that its corrective actions had addressed the FDA's concerns raised in a November 2011 letter;

- CocoKefir's 2015 trademark application stating the brand had been in use since 2010; and

- CocoKefir's social media pages promoting and advertising the brand from 2011 until present day.

*Id.* at 3-4.  The Court concluded:  "Each of these indications of continued activity by CocoKefir was publicly available to Plaintiff and a reasonable company concerned with a competitor's erosion of its market share would have discovered them."  *Id.* at 4.  Because Lifeway offered no other justification for its delay in filing this case, the Court dismissed its claims based on laches and applicable statutes of limitations.  *Id.* at 3-4.

On November 15, 2016, Defendants' counsel wrote to Lifeway's attorneys and asked them to provide Lifeway's basis for its allegation that "[n]ot long after

1 the FDA's [2011] warning letter, the old 'CocoKefir' product was withdrawn from
2 the market."  Declaration of Brian M. Berliner In Support of Defendants' Motion
3 for Attorneys' Fees and Costs ("Berliner Decl.") ¶ 16, Ex. A.  Lifeway's attorneys
4 responded on December 2, 2016, but their response referred only to facts from
5 2016, and provided no evidence to support Lifeway's specific allegation that the
6 CocoKefir product was withdrawn in 2011.  *Id.* ¶ 16, Ex. B.  Indeed, Lifeway's
7 second cease-and-desist letter in October 2012 definitively establishes that Lifeway
8 itself knew it had no support for its "withdrawn from the market" argument.  On
9 December 13, 2016, Defendants' counsel again wrote to Lifeway's attorneys
10 seeking the basis for Lifeway's allegation, but, as of this filing, has received no
11 response.  *Id.* ¶ 16, Ex. C.

**III.   ARGUMENT**

    **A.   Defendants Are Entitled to Fees Under the Lanham Act**

14       The Lanham Act provides that the Court may award reasonable attorneys'
15 fees to the prevailing party in exceptional cases.  35 U.S.C. § 1117(a).  "[A]n
16 'exceptional case' is simply one that stands out from others with respect to the
17 substantive strength of a party's litigating position (considering both the governing
18 law and the facts of the case) or the unreasonable manner in which the case was
19 litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749,
20 1756 (2014).[2]  In making this inquiry, courts consider a number of nonexclusive
21 factors, including "frivolousness, motivation, objective unreasonableness (both in
22 the factual and legal components of the case) and the need in particular
23 circumstances to advance considerations of compensation and deterrence."  *Id*. at
24 1756 n.6.

---

27     [2] In *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir.
28 2016), the Ninth Circuit, sitting *en banc*, held that the test for exceptionality under *Octane Fitness* also applies to Lanham Act cases.  *Id.* at 1181.

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1    "[T]he most commonly cited ways to establish exceptionality include

2    evidence showing that the plaintiff failed to conduct an adequate prefiling

3    investigation or to exercise due diligence before filing suit; the plaintiff knew or

4    should have known that its claim was meritless or lacked substantive strength; the

5    plaintiff initiated the litigation to extract settlements from defendants to avoid

6    costly litigation; the plaintiff proceeded in bad faith; or litigation misconduct."

7    *Enovsys LLC v. AT&T Mobility LLC*, No. CV 11-5210 SS, 2016 WL 3460794, at

8    *7 (C.D. Cal. Feb. 16, 2016) (internal quotation marks omitted).  Courts determine

9    whether a case is exceptional "using a preponderance of the evidence standard."

10   *SunEarth*, 839 F.3d at 1181.  *See also Anhing Corp. v. Viet Phu, Inc.*, No. 14-

11   56664, 2016 WL 6561499, at *2 (9th Cir. Nov. 4, 2016) (holding "district courts

12   analyzing a request for fees under the Lanham Act should . . . us[e] a

13   preponderance of the evidence standard"); *ROAR, LLC v. ROAR Global Ltd.*, No.

14   215CV05865ODWAFM, 2016 WL 7115902, at *7 (C.D. Cal. Dec. 5, 2016)

15   (same).

16        Here, as confirmed by the Court's rulings on Defendants' motion to dismiss

17   and Lifeway's requests for preliminary relief, Lifeway's claims were exceptionally

18   meritless and were seemingly brought only for the improper purpose of harassing

19   and intimidating a competitor.  As an initial matter, given Lifeway's admitted

20   awareness since 2011 of the CocoKefir brand and the self-professed "competitive

21   threat" it posed, Lifeway's claims were clearly and unambiguously time-barred

22   under the widely accepted doctrine of laches and state statutes of limitations.  ECF

23   No. 41.  Even if Lifeway's claims had not been time-barred, they were objectively

24   unreasonable: as the Court noted, "the FDA has reviewed the core of Plaintiff's

25   claim and found it to be unworthy of regulatory action."  ECF No. 32 at 3.  The

26   Court also held that Lifeway's evidence in support of its assertion that CocoKefir

27   was likely to mislead consumers, including its attorney-conducted survey and social

28   media comments, was "wholly unconvincing."  *Id*.  *See Octane Fitness*, 134 S. Ct.

8

1  at 1757 ("[A] case presenting either subjective bad faith or exceptionally meritless

2  claims may sufficiently set itself apart from mine-run cases to warrant a fee

3  award."); *Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*, No. CV 14-01918 JVS

4  (JCGx), 2015 U.S. Dist. LEXIS 178443, at *11 (C.D. Cal. Apr. 1, 2015) (finding

5  case exceptional under *Octane Fitness* where plaintiff's Lanham Act claims were

6  "clearly groundless and unreasonable in light of [plaintiff's] lack of evidence to

7  support its claims"); *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932RSM,

8  2015 WL 5156330, at *4 (W.D. Wash. Sept. 2, 2015) (same); *Vehicle Interface*

9  *Techs., LLC v. Jaguar Land Rover N. Am.*, LLC, No. CV 12-1285-RGA, 2015 WL

10  9462063, at *4 (D. Del. Dec. 28, 2015) (finding patent case exceptional where "the

11  litigation was objectively unreasonable").

12      Moreover, Lifeway either knew of or willfully ignored the meritlessness of

13  its claims.  Lifeway admitted its awareness of and concerns about the CocoKefir

14  brand in 2011 (ECF No. 41 at 3; ECF No. 6-2 ¶ 3), and it clearly also knew of its

15  2010 and 2012 correspondence with CocoKefir that it failed to act on.  Likewise,

16  Lifeway had every reason to know that CocoKefir's activities had continued until

17  the present day, contrary to its unfounded allegation that the CocoKefir brand was

18  withdrawn from the market shortly after 2011.  In addition to Lifeway's second

19  cease-and-desist letter to CocoKefir in October 2012, the FDA's 2013 response to

20  CocoKefir, the 2015 CocoKefir trademark application, and CocoKefir's social

21  media pages were all publicly available "indications of continued activity by

22  CocoKefir" that a "reasonable company concerned with a competitor's erosion"—

23  *i.e.*, Lifeway—"would have discovered."  ECF No. 41 at 4.  Even a cursory pre-

24  filing investigation would have disproven Lifeway's allegation that its delay in

25  filing suit was justified because of CocoKefir's purported withdrawal from the

26  market.  As the Court noted, "[a]ll Lifeway had to do to verify whether CocoKefir

27  had withdrawn from the market and ceased to harm their market share was to log on

28

9

to Twitter."[3]  *Id.*  Lifeway's knowledge of or willful disregard of its case's meritlessness, as well as its failure to conduct an adequate pre-filing investigation for evidence that directly contradicted its allegations, further demonstrates that this case is exceptional.  *See Enovsys*, 2016 WL 3460794, at *7 (the most common way to establish exceptionality is evidence that "the plaintiff failed to conduct an adequate prefiling investigation or to exercise due diligence before filing suit"); *Yufa v. TSI Inc.*, No. 09–cv–01315–KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (finding patent case exceptional because of plaintiff's lack of adequate pre-filing investigation); *Dzinesquare*, 2015 U.S. Dist. LEXIS 178443, at *10 (finding Lanham Act case exceptional in light of plaintiff's failure to introduce evidence that plaintiff "should have possessed regardless of discovery").

Finally, even if Lifeway could legitimately contend that it had a good-faith basis for pursuing its stale and meritless claims (which it cannot), the weakness of its case became abundantly clear no later than October 17, 2016, when Defendants' filed their opposition to the amended motion for preliminary injunction, which carefully laid out the parties' 2010 and 2012 correspondence (which Lifeway failed to mention in its Complaint or any of its briefing), as well as other evidence demonstrating why Lifeway's claims were time-barred.  *See ECF No. 17.*  Despite this incontrovertible evidence, Lifeway continued to pursue this case, unreasonably multiplying the proceedings and expense to Defendants.  In addition, Lifeway and its counsel engaged in other litigation conduct that unreasonably and unnecessarily multiplied the proceedings:

- Lifeway demanded Defendants respond to its September 16, 2016 cease-and-desist letter by September 23, 2016 (*see* ECF No. 17-6, Ex.

---

[3] As the Court stated, Lifeway's failure to investigate Defendants' social media activity is especially notable given Lifeway's allegation that it learned of the alleged relaunch of CocoKefir via a "renewed social media campaign."  *Id.*

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

GG), but then proceeded to commence this action two days before that deadline, on September 21, 2016 (see ECF No. 1).

- Lifeway filed an amended motion for preliminary injunction that was not only untimely, it also failed to address the issues raised by the Court in its order denying TRO and included a new survey and untimely new allegation—never alleged in its Complaint—that Defendants' product was mislabeled.

- Lifeway submitted new evidence and arguments with its reply in support of its preliminary injunction—including an incomplete YouTube page that conspicuously omitted evidence which directly contradicted Lifeway's claims—requiring Defendants to file an additional brief objecting to this untimely and improper material. *See* ECF Nos. 26, 26-1, 26-2, 26-3, 26-4, 27.

Lifeway's litigation conduct, which unreasonably and unnecessarily multiplied the proceedings, provides yet another basis for finding this case exceptional. *See Yufa*, 2014 WL 4071902, at *3 (case exceptional where, *inter alia*, plaintiff's "continued prosecution of this action was objectively unreasonable"); *Enovsys*, 2016 WL 3460794, at *7 (case may be deemed exceptional based on unreasonable litigation); *Milo & Gabby*, 2015 WL 5156330, at *4 (Lanham Act case exceptional where "Plaintiffs essentially pursued a claim for which they had no evidentiary basis, and then attempted to circumvent that problem by improperly raising legal arguments never pled in their Complaint"); *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2016 WL 5477611, at *5-6 (M.D.N.C. Sept. 29, 2016) (Lanham Act case exceptional where plaintiff "fail[ed] to continually assess the substantive strength of its litigation position" despite evidence contradicting initial positions).

### B.      Defendants Are Entitled to Fees Under 28 U.S.C. § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under section 1927 are proper "when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (citation and internal quotation marks omitted).

Here, as discussed above, Lifeway's attorneys either knowingly or recklessly raised the frivolous assertion that CocoKefir was withdrawn from the market shortly after it received the FDA's November 2011 letter—even though the publicly available, readily discoverable evidence was directly to the contrary. *See* ECF No. 41 at 3-4. Indeed, Defendants' counsel wrote to Lifeway's attorneys and asked them to provide the basis for the allegation that the CocoKefir product was purportedly withdrawn in 2011. Berliner Decl. ¶ 16, Ex. A. In their response, Lifeway's attorneys attempted to point to facts occurring in the 2016 period, but provided no evidence in support of the specific allegation that the CocoKefir product was withdrawn in 2011. *Id.* ¶ 16, Exs. B & C. Accordingly, as a separate and independent basis, Defendants are also entitled to attorneys' fees pursuant to 28 U.S.C. § 1927 based on Lifeway's counsel's pursuit of frivolous claims and its attempt to "knowingly or recklessly raise[] a frivolous argument"—*i.e.*, that CocoKefir was withdrawn in 2011—in a vain effort to save those claims. *See Ketab Corp. v. Mesriani Law Grp.*, No. CV 14-7241-RSWL-MRWX, 2016 WL 4425714, at *7-8 (C.D. Cal. Aug. 17, 2016); *Parrott v. Corley*, No. 05-74552, 2006 WL 2471943, at *3 (E.D. Mich. Aug. 24, 2006), *aff'd*, 266 F. App'x 412 (6th Cir. 2008) (granting defendant's motion for § 1927 fees where plaintiff unreasonably pursued arguments it should have known were without merit).

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

### C.    Defendants' Fee Request Is Reasonable

Attorneys' fees are recoverable by a prevailing party if they are reasonable. *In re SNTL Corp.*, 571 F.3d 826, 842 (9th Cir. 2009).  Where, as here, attorneys' fees are recoverable under the Lanham Act, the Ninth Circuit has adopted the "lodestar" method of calculating reasonable attorneys' fees.  *See, e.g.*, *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  To calculate the amount of attorneys' fees under the lodestar method, "the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Id.*

In making its determination of both the number of hours reasonably expended and a reasonable hourly rate, the courts consider factors including the "experience, reputation, and ability of the attorneys"; the "results obtained"; the "customary fee"; and the "novelty and difficulty of the questions." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976)).  "If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee." *Id.* at 622-23 (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir.1987)).  The lodestar figure should only be adjusted in rare instances. *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996) ("There is a strong presumption that the lodestar figure represents a reasonable fee.  'Only in rare instances should the lodestar figure be adjusted on the basis of other considerations.'") (citations omitted).

Here, the appropriate lodestar amount is $215,979.75 for the fees that Defendants incurred in opposing Lifeway's motion for preliminary injunction ($151,508.70) and in bringing Defendants' motion to dismiss ($64,471.05).[4]

---

[4] This total does not include any fees incurred preparing and bringing this motion. *Id.* ¶ 4.  Defendants intend to file a supplemental motion for fees incurred in the briefing of this motion.

1    Berliner Decl. ¶ 4.  This amount is based on multiplying the reasonable hourly rate

2    for each attorney and paralegal by the number of hours reasonably expended by

3    each.  *Id.* ¶¶ 4-6.

4              1.    The hourly rates for Defendants' timekeepers are reasonable

5              When calculating the lodestar, the Court first determines a reasonable hourly

6    rate for the prevailing parties' attorneys.  "In determining a reasonable hourly rate,

7    the district court should be guided by the rate prevailing in the community for

8    similar work performed by attorneys of a comparable skill, experience, and

9    reputation."  *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210-11 (9th Cir. 1985).

10             A party seeking fees assists the court in calculating the lodestar by submitting

11   "satisfactory evidence . . . that the requested rates are in line with those prevailing

12   in the community for similar services by lawyers of reasonably comparable skill,

13   experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984).  The

14   relevant community is that in which the district court sits.  *Schwartz v. Sec'y of*

15   *Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  Recognizing that

16   determining a reasonable rate is "inherently difficult," *Blum*, 465 U.S. at 895 n.11,

17   courts routinely rely on declarations of attorneys who practice in the relevant

18   community to establish a reasonable hourly rate, *see Widrig v. Apfel*, 140 F.3d

19   1207, 1209 (9th Cir. 1998), as well as determinations of reasonable hourly rates in

20   the same district, *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.

21   2008).

22             Defendants are represented in this litigation by attorneys from O'Melveny &

23   Myers LLP ("O'Melveny").  O'Melveny is one of the top law firms in the country,

24   the oldest existing law firm in Los Angeles, and is recognized for its expertise in

25   complex litigation in federal court.  Berliner Decl. ¶ 2.

26             The O'Melveny team on this matter has extensive experience in complex

27   litigation and intellectual property matters.  Brian Berliner has decades of

28   experience handling complex litigation and intellectual property matters and has

14

been repeatedly recognized by *Chambers USA* as a leading intellectual property attorney. *Id.* ¶ 7. Jordan Raphael is an experienced commercial litigator focused on intellectual property matters and has been selected as one of the 2016 Southern California Rising Stars by *Super Lawyers*. *Id.* ¶ 9. The other primary attorneys on this case also have substantial complex litigation experience, including intellectual property and consumer product false advertising cases. *Id.* ¶¶ 7-14. These considerations support the reasonableness of Defendants' attorneys' rates. *See Kerr*, 526 F.2d at 70 (relevant considerations are "the skill requisite to perform the legal service properly"; "the experience, reputation, and ability of the attorneys"; and "the nature and length of the professional relationship with the client").

As set forth in the attached declaration of Defendants' counsel, the hourly rates requested for Defendants' attorneys reflect their actual rates charged to clients, paid by Defendants, and are consistent with the prevailing rates in the community for work performed by attorneys of comparable skill, experience, and reputation. Berliner Decl. ¶ 15. These rates are also commensurate with the rates that this Court has previously deemed reasonable in other similar matters and that Lifeway's counsel has sought in similar matters. *See, e.g.*, *Pom Wonderful LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS (JWJx), 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (finding partner rates between $450 and $700 and associate rates between $275 and $425 reasonable "[b]ased on the Court's familiarity with the rates charged by other firms in the Los Angeles legal community"); *Love v. Mail on Sunday*, No. CV 05-7798 ABC (PJWx), 2007 WL 2709975, at *8 (C.D. Cal. Sept. 7, 2007) (finding partner/counsel rates between $460 and $690 and associate rates between $305 and $460 reasonable); *Teller v. Dogge*, 112 U.S.P.Q.2D (BNA) 1513, 1520 (D. Nev. 2014) (finding $345-$650 billing rates and hours expended by Greenberg Traurig reasonable for purposes of attorneys' fees award under the Lanham Act and Copyright Act). Further, the rates set forth in the attached

1  declaration and billed to Defendants represent a voluntary reduction of 10% of

2  Defendants' attorneys' regular rates.  Berliner Decl. ¶ 6.

3       In light of this evidence, the attorneys' rates are reasonable.

4           2.    The number of hours billed by Defendants' attorneys were

5                 reasonably expended in this case

6       The Court next determines the number of hours reasonably spent on the

7  litigation.  *Intel*, 6 F.3d at 622.  As a general matter, a district court "should defer to

8  the winning lawyer's professional judgment as to how much time he was required

9  to spend on the case."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

10 Cir. 2008) ("[A]fter all, he won, and might not have, had he been more of a

11 slacker.").

12      This motion does not seek compensation for O'Melveny, but reimbursement

13 to Defendants who successfully defended against Lifeway's aggressive and

14 unreasonable claims and litigation tactics.  Berliner Decl. ¶ 16, Ex. A.  Defendants'

15 attorneys billed approximately 356.00 hours in this litigation.  *Id.* ¶ 4.  As explained

16 in greater detail below, the time spent by Defendants' attorneys in this litigation,

17 which was already billed to Defendants and largely paid,[5] was reasonable.  *Id.* ¶ 5.

18           a.    *Motion for Preliminary Injunction*

19      Attorney time expended litigating Lifeway's *Ex Parte* Application for

20 Preliminary Injunction, or in the Alternative, for Temporary Restraining Order

21 (ECF No. 6) and Amended Motion for Preliminary Injunction (ECF No. 12-1),

22 totaling 249.80 hours, was reasonable.  Notably, much of the research and scope of

23 the motion practice was necessitated by Lifeway's litigation tactics.  For example,

24 Defendants were required to expend considerable time investigating and rebutting

25 the misrepresentations and incomplete record presented in Lifeway's motions that

26 Lifeway could have avoided by conducting an appropriate pre-filing investigation

27

28
---

[5] Only the most recent bill, sent on December 7, 2016, and less than 30 days outstanding, has not been paid.  The bill is current, not past due. *Id.* ¶ 5.

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1   of its records (*e.g.*, its prior cease-and-desist letters to CocoKefir) as well as the

2   public record—as this Court has noted, "[a]ll Lifeway had to do to verify whether

3   CocoKefir had withdrawn from the market and ceased to harm their market share

4   was to log on to Twitter."  ECF No. 41 at 4.  Additionally, Defendants were

5   required to respond to the allegations and arguments presented in both Lifeway's *ex*

6   *parte* application as well as Lifeway's amended motion, which belatedly introduced

7   a "wholly unconvincing" survey and new legal arguments regarding Defendants'

8   purportedly misleading conduct.  *See* ECF No. 32 at 3.  Had Lifeway conducted an

9   appropriate pre-suit investigation, Defendants' attorneys would not have been

10  required to expend as much time as they did litigating Lifeway's motion for

11  preliminary injunction.

12              *b.     Motion to Dismiss*

13         Similarly, the time spent by Defendants' attorneys related to bringing and

14  litigating Defendants' Motion to Dismiss Complaint (ECF No. 28)—106.20

15  hours—was reasonable.  As with the motion for preliminary injunction,

16  Defendants' attorneys would not have been required to expend as much time as

17  they did litigating Defendants' motion to dismiss (or any time at all litigating this

18  case) had Lifeway conducted an appropriate pre-suit investigation.  The Court

19  concluded as much in its order granting dismissal: "Defendants have shown that

20  Plaintiff's delay in filing suit was unjustified because it was unreasonable to believe

21  that CocoKefir had withdrawn from the market given their interactions with the

22  FDA and USPTO and their continuous social media presence."  ECF No. 41 at 5.

23              3.    <u>The lodestar is reasonable and no adjustment is warranted</u>

24         After the lodestar is calculated, "the district court may adjust the

25  'presumptively reasonable' lodestar figure based upon the facts listed in *Kerr* . . .

26  that have not been subsumed in the lodestar calculation."  *Intel*, 6 F.3d at 622.

27  Factors to be considered in reaching the initial lodestar calculation or in deciding

28  whether to adjust the lodestar include:

17

1. The time and labor required;

2. The novelty and difficulty of the questions;

3. The skill requisite to perform the legal services properly;

4. The preclusion of other employment due to acceptance of the case;

5. The customary fee;

6. The contingent or fixed nature of the fee;

7. The limitations imposed by the client or the case;

8. The amount involved and the results obtained;

9. The experience, reputation, and ability of the attorneys;

10. The undesirability of the case;

11. The nature of the professional relationship with the client;

12. Awards in similar cases.

*Kerr*, 526 F.2d at 70.  Here, these factors support the reasonableness of Defendants' requested rates and hours and the resulting lodestar.

The time and labor that Defendants' timekeepers were required to expend in this case were increased by Lifeway's own actions.  The *ex parte* application, and subsequent amended motion for preliminary injunction, for instance, was prompted by Lifeway's failure to conduct an appropriate pre-lawsuit investigation of its records or public records.  Despite the case's complexity and Lifeway's tactics, Defendants' attorneys litigated this case efficiently.  Defendants' staffing was at all times comparable to that of Lifeway's.

Defendants' attorneys have submitted the total hours billed by each timekeeper based on the contemporaneous time records for all billable work Defendants seek to recover.[6]  Berliner Decl. ¶¶ 4-5.  Defendants' lead attorney has reviewed each billing entry and attests that the billing totals provided represent time actually spent by Defendants' attorneys in this action.  *See Blackwell v. Foley*, 724

---

[6] Copies of the invoices sent to Defendants containing these summaries and contemporaneous time entries can be made available upon the Court's request.

1  F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in

2  fact, [she] took the time claimed . . . is evidence of considerable weight on the issue

3  of time required.").  Invoices for this time billed were contemporaneously

4  submitted to Defendants and have been paid in full except for the most recently

5  issued invoice.  Berliner Decl. ¶ 5.  This further supports the conclusion that both

6  the hours and the hourly rates billed by Defendants' attorneys were reasonable.  *See*

7  *Stonebrae v. Toll Bros.*, No. C-08-0221 EMC, 2011 WL 1334444, at *6 (N.D. Cal.

8  Apr. 7, 2011) ("That presumption [that the lodestar is reasonable] is particularly

9  forceful where . . . the fees were billed to and actually paid by the plaintiff during

10 the course of the litigation, the relationship between counsel and the plaintiff was a

11 valid business relationship, and the plaintiff, as client, exercise[d] business

12 judgment in retaining and paying counsel.") (citations omitted).

13      As demonstrated, the *Kerr* factors support the reasonableness of the hourly

14 rates and billed hours, and the resulting lodestar.  No adjustment of the lodestar is

15 warranted, moreover, in light of the result that Defendants' attorneys obtained.

16 Defendants prevailed in obtaining a complete dismissal of Lifeway's complaint, in

17 addition to defeating Lifeway's motion for preliminary injunction.  ECF Nos. 32,

18 41.  In light of the exemplary results that Defendants obtained, Defendants should

19 receive their attorneys' fees equivalent to the unadjusted lodestar.  *See Moreno*, 534

20 F.3d at 1112.

21 **IV.    CONCLUSION**

22      For the foregoing reasons, Defendants respectfully request that the Court

23 grant their request for attorneys' fees in the amount of $215,979.75.

24

25

26

27

28

DEFENDANTS' MOTION FOR
ATTORNEYS' FEES & COSTS
2:16-CV-07099-R-JEM

1

2
Dated: December 28, 2016          O'MELVENY & MYERS LLP

3
                                  By:    /s/ Brian M. Berliner
                                         Brian M. Berliner
4

5
                                  Brian M. Berliner (S.B. #156732)
                                  bberliner@omm.com
6                                 Jordan Raphael (S.B. #252344)
                                  jraphael@omm.com
7                                 O'MELVENY & MYERS LLP
                                  400 South Hope Street
8                                 Los Angeles, California  90071-2899
                                  Telephone:  (213) 430-6000
9                                 Facsimile:   (213) 430-6407

10
                                  Tim Byron (S.B. #277569)
                                  tbyron@omm.com
11                                Jesse J. Koehler (S.B. #300530)
                                  jkoehler@omm.com
12                                O'MELVENY & MYERS LLP
                                  Two Embarcadero Center, 28th Floor
13                                San Francisco, California 94111
                                  Telephone:  (415) 984-8700
14                                Facsimile:   (415) 984-8701

15
                                  Attorneys for Defendants
16                                MILLENNIUM PRODUCTS, INC. and
                                  COCOKEFIR LLC
17

18

19

20

21

22

23

24

25

26

27

28